[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  15-15732
_____

D.C. Docket Nos. 2:12-CV-0316-WKW, 2:13–CV-0781-WKW,
2:14-CV-1028-WKW, 2:14-CV-1029-WKW, 2:14-CV-1030-WKW

CHRISTOPHER EUGENE BROOKS

Intervenor Plaintiff - Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

Defendants - Appellees.
_____

Appeals from the United States District Court
for the Middle District of Alabama
_____

(January 19, 2016)

Before HULL, MARCUS, and JULIE CARNES, Circuit Judges:

MARCUS, Circuit Judge:

Appellant Christopher E. Brooks, an Alabama death row inmate, appeals

from the district court's denial of his emergency motion to stay execution for the

1992 rape, burglary, robbery, and murder of Jo Deann Campbell.  He has also filed

with this Court an emergency motion for a stay of execution. After the state moved to set an execution date, Brooks intervened pursuant to Fed. R. Civ. P. 24(b) in a consolidated action filed by five inmates on Alabama's death row. That lawsuit had started more than three years earlier as a claim brought under Title 42 U.S.C. § 1983 in the United States District Court for the Middle District of Alabama challenging the constitutionality of Alabama's method of execution. In the consolidated action, the plaintiffs broadly claimed that Alabama's current three-drug lethal injection protocol -- which uses midazolam, rocuronium bromide, and potassium chloride -- created a substantial risk of serious harm in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment.

After Brooks recently intervened in the consolidated action and filed a complaint largely repeating the earlier plaintiffs' allegations, he filed an emergency motion last month in the district court to stay his execution, which is now scheduled for January 21, 2016 at 6:00 pm CST. The trial court denied his motion for a stay, explaining that Brooks had not shown a substantial likelihood of success on the merits of his Eighth Amendment claim because: (1) he failed to show an available and feasible alternative method of execution, as required by controlling case law; and (2) he failed to show that he brought this claim within the applicable two-year statute of limitations. Moreover, the district court determined that the balance of equities weighed against granting a stay because Brooks unreasonably

2

delayed bringing his lawsuit until it was too late to resolve the merits of his claim without staying his execution. After carefully reviewing the record before us, we can discern no abuse of discretion and, accordingly, affirm the judgment of the district court, and also deny Brooks's emergency motion to stay filed in this Court.

## I.

The facts of the rape, burglary, robbery, and murder that Brooks committed have been laid out in several earlier decisions of the Alabama state courts. See Brooks v. State, 695 So. 2d 176, 178-79 (Ala. Crim. App. 1996) ("Brooks I"), aff'd, 695 So. 2d 184, 186-87 (Ala. 1997) ("Brooks II"); see also Brooks v. State, 929 So. 2d 491, 494-95 (Ala. Crim. App. 2005) ("Brooks III"). As the state court detailed, on December 31, 1992, Jo Deann Campbell was found bludgeoned to death, naked from the waist down, with semen in her vagina. Brooks was later seen driving the victim's car, and was arrested while in possession of her car keys and credit card. Law enforcement authorities confirmed that he had cashed the victim's paycheck and had pawned some items missing from her apartment. Brooks also admitted to having had sex with Ms. Campbell, which was corroborated by DNA evidence.

After trial in Jefferson County, Alabama, a state jury convicted Brooks of three counts of capital murder for killing the victim during the course of a rape, during the course of a robbery, and during the course of a burglary. Following the

penalty phase, the jury recommended that Brooks be sentenced to death by a vote of 11 to 1, and an Alabama circuit court sentenced Brooks to death. His conviction and death sentence were affirmed on direct appeal, see Brooks I, 695 So. 2d at 176; Brooks II, 695 So. 2d at 184, and the United States Supreme Court denied his petition for certiorari. Brooks v. Alabama, 522 U.S. 893 (1997). On collateral review, the Alabama state court denied his Rule 32 petition, and the Alabama Court of Criminal Appeals affirmed. Brooks III, 929 So. 2d at 515. Brooks then petitioned the United States District Court for the Northern District of Alabama for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition. We affirmed, and the United States Supreme Court again denied his petition for certiorari. Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1305 (11th Cir. 2013) ("Brooks IV"), cert. denied sub nom. Brooks v. Thomas, 134 S. Ct. 1541 (2014).

On September 10, 2014, the Defendants (collectively, the Alabama Department of Corrections or "ADOC") amended Alabama's execution protocol in two ways: (1) they substituted midazolam hydrochloride for pentobarbital as the first drug administered in its three-drug lethal-injection sequence, and (2) they substituted rocuronium bromide for pancuronium bromide as the second drug to be administered. The third drug, potassium chloride, remained the same. Thereafter, Brooks's execution date was initially set for May 21, 2015, but the Alabama

Supreme Court stayed the execution, pending the Supreme Court's decision in

Glossip v. Gross, 135 S. Ct. 2726 (2015), a case that squarely raised Eighth

Amendment claims about the use of midazolam in lethal-injection executions in

Oklahoma.

While Glossip was working its way through the courts, a consolidated action

was being litigated in the United States District Court for the Middle District of

Alabama. That group of cases began as one lawsuit originally filed on April 6,

2012, when an Alabama death row inmate sued pursuant to 42 U.S.C. § 1983 to

challenge the constitutionality of Alabama's lethal injection protocol. See Grayson

v. Dunn, No. 12-cv-00316-WKW (M.D. Ala.). The lawsuit initially challenged

Alabama's previous lethal injection protocol, but it evolved along with the state's

new protocol, and now is known as the "Midazolam Litigation." Since 2012, cases

brought by four other Alabama death row inmates have been consolidated into the

Midazolam Litigation. On October 18, 2005, the district court denied the state's

motion to dismiss the Midazolam Litigation, and on November 20, 2015, the

district court set an evidentiary hearing for April 19-22, 2016.

Although the consolidated action had been pending in district court since

2012, Brooks did not move to intervene until November 2, 2015, more than three-

and-a-half years after the suit was commenced, and forty days after the state

moved the Alabama Supreme Court to set an execution date for Brooks. On

November 23, 2015, the district court granted the motion to intervene. Earlier on the same day, the Alabama Supreme Court had granted the state's motion and set Brooks's execution for January 21, 2016.

On December 4, 2015, Brooks filed an Emergency Motion for Stay of Execution. The district court denied the application on December 22, 2015. In a thorough and well-reasoned order, the district court explained that Brooks had not established a substantial likelihood of success on the merits of his Eighth Amendment claim because he failed to adequately show an available and feasible alternative method of execution, as required by Glossip. Among other things, the district court determined that Brooks had not sufficiently demonstrated that two of his proposed single-injection alternatives -- sodium thiopental and pentobarbital -- are readily available to the ADOC. The court added that Brooks had also failed to adequately demonstrate that his third proposed alternative -- midazolam alone -- is an effective alternative. In addition, the district court concluded that Brooks had not shown a substantial likelihood of success on the merits because his Eighth Amendment claim was time-barred as of 2004, and he had not sufficiently demonstrated that the clock should have been reset when Alabama switched to the current protocol. Finally, the district court held that because Brooks unreasonably delayed bringing this lawsuit, the balance of equities did not lie in Brooks's favor for a stay. Brooks now appeals the district court's denial of his emergency motion

6

for a stay and also moves this Court on an emergency basis for a stay of execution "to allow measured consideration of the issues of first impression raised by the District Court's ruling."

## II.

It is by now hornbook law that a court may grant a stay of execution only if the moving party establishes that: "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." See Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011) (emphasis added). Moreover, we review the denial of a stay of execution only for abuse of discretion. Id.

In an Eighth Amendment challenge to the lethal injection protocol used by Oklahoma, the Supreme Court recently held:

> [P]risoners cannot successfully challenge a method of execution unless they establish that the method presents a risk that is " 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' " To prevail on such a claim, "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' " . . . [P]risoners "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." Instead, prisoners must identify an alternative that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."

7

. . . [T]he requirements of an Eighth Amendment method-of-execution claim [are summarized] as follows: "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives."

Glossip v. Gross, 135 S. Ct. 2726, 2737 (2015) (citations and emphasis omitted); see also Baze v. Rees, 553 U.S. 35, 50, 61 (2008) (plurality opinion); Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1283 (11th Cir. 2015). In Glossip, the Supreme Court applied this test and held that the district court did not commit clear error when it found that midazolam (as the first drug in Oklahoma's three-drug protocol) is highly likely to render a person unable to feel pain during an execution, and, therefore, that the plaintiff failed to sustain his burden under the Eighth Amendment. 135 S. Ct. at 2739. The three-drug protocol approved in Glossip -- using midazolam, rocuronium bromide (or a "functionally equivalent" bromide paralytic), and potassium chloride, id. at 2734-35 -- is the very same protocol that Brooks challenges here. On this record, Brooks has not established a substantial likelihood that the State's lethal injection protocol creates a "demonstrated risk of severe pain" (an especially difficult burden to meet since the Supreme Court approved of the very same three-drug protocol in Glossip).

In the face of Glossip, Brooks's claim now is that the three-drug protocol creates a substantial risk of severe pain when compared to Brooks's proposed single-injection alternatives. We agree with the district court, however, that

8

Brooks has not established a substantial likelihood that he would be able to show that the risk is "substantial when compared to the known and available alternatives" -- the second prong of the Glossip test.[1]  As the Supreme Court made abundantly clear in Glossip itself, the burden rests with the claimant to "plead and prove" both prongs of the test.  See id. at 2739; see also id. at 2737 (holding that "the condemned prisoner [must] establish[] that the State's lethal injection protocol creates a demonstrated risk of severe pain [and] . . . that the risk is substantial when compared to the known and available alternatives" (quoting Baze, 553 U.S. at 61)).  Thus, capital prisoners seeking a stay of execution must show "a likelihood that they can establish both that [the state's] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives."  Id.; see also id. ("A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner . . . show[s] that the risk is substantial when compared to the known and available alternatives." (quotation omitted and emphasis added)).

In his intervenor complaint, Brooks has alleged that midazolam -- the first of the three drugs used in Alabama's execution protocol -- will not properly anesthetize him so as to prevent him from feeling an "unconstitutional level of

---

[1] In reaching this conclusion, we do not address Brooks's claim that the district court placed too high a pleading burden on him.  The district court did not dismiss Brooks's complaint for failure to state a claim, and he is not appealing any decision to that effect.  Rather, the district court denied his emergency motion to stay his execution, and that is all that we are reviewing on appeal.

pain" associated with the injection of the other two drugs that will kill him (rocuronium bromide and potassium chloride). He also claims that midazolam may exhibit a "ceiling effect" -- that is, at a certain point, an increase in the dose administered will not have any greater effect on an inmate. Brooks says that there are three alternative methods of execution available to the ADOC that significantly reduce the risk of an unconstitutional level of pain: (1) a single injection of pentobarbital; (2) a single injection of sodium thiopental; or (3) a single injection of midazolam.  On this record, we are unpersuaded.

As for the first option, Brooks provides three pieces of evidence in support of his allegation that a single dose of pentobarbital is a known, available, and safer alternative method of execution. First, he cites news articles showing that in other states (Texas, Colorado, Ohio, Georgia, Missouri, Mississippi, Oklahoma, South Dakota, and Pennsylvania), nearly forty inmates have been executed using "a single bolus of pentobarbital, making it the most common method of execution in the United States." But the fact that the drug was available in those states at some point over the past two years does not, without more, make it likely that it is available to Alabama now. Second, he cites a bare comment made by counsel for the Alabama Department of Corrections during a status conference in another case in May 2014.[2] But that alleged admission -- which the ADOC construes as saying

---

[2] The transcript from that hearing reflects the following brief exchange:

10

that compounded pentobarbital was available to certain states, but not necessarily to Alabama -- is twenty months out of date at this point.

Indeed, in more recent filings, the ADOC has said that it has been unable to procure pentobarbital and that it does not have a source for pentobarbital. See Doc. 73 at 27; see also Glossip, 135 S. Ct. at 2733-34 ("The District Court below found that both sodium thiopental and pentobarbital are now unavailable to Oklahoma."). While pleadings do not constitute evidence, it is not the state's burden to plead and prove that it cannot acquire the drug. As the Supreme Court explained, it is Brooks's burden to "identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." Id. at 2737 (quotation omitted). Brooks has neither shown a substantial likelihood that there is now a source for pentobarbital that would sell it to the ADOC for use in executions, nor that an execution protocol involving this drug would be readily implementable by the ADOC. Without some showing that pentobarbital is currently "known and available" to the ADOC, there is no substantial likelihood that Brooks could satisfy this prong of the Glossip test.

---

The Court: But [pentobarbital is] available through compounding companies or compounding agencies?

Counsel for ADOC: It is, Your Honor.

See Status Conference, Arthur v. Myers, No. 2:11-cv-00438-WKW-TFM (M.D. Ala. May 19, 2014), Doc. 171.

11

As for a second alternative, Brooks proposes the use of sodium thiopental, and alleges that it is available based on the representations of three states -- Nebraska, Ohio, and Texas -- that they could legally obtain the drug. Brooks cites as support just a newspaper article in which the governor of Nebraska announced that the state had purchased sodium thiopental from India.[3] He also cites a second news article reporting that Texas had received approval from the Drug Enforcement Agency to import sodium thiopental.[4] And, finally, he references a letter from Ohio to the Food and Drug Administration ("FDA") claiming that there are legal ways to import sodium thiopental for use in executions.[5]

These allegations of availability are not sufficient to satisfy the unambiguous requirement laid out in Glossip. The newspaper assertion that a drug might have been available to others at some other time from India does not show a substantial

[3] See Paul Hammell and Martha Stoddard, "Nebraska has purchased drugs necessary for lethal injections, Gov. Ricketts says," Omaha World-Herald (May 14, 2015), http://www.omaha.com/news/crime/nebraska-has-purchased-drugs-necessary-for-lethal-injections-gov-ricketts/article_3423d60a-fa8c-11e4-a761-1f25f74fc5ba.html ("Ricketts . . . said the state has purchased two of the necessary drugs, sodium thiopental and pancuronium bromide, from a distributor in India, HarrisPharma, and already has a supply of the third drug required, potassium chloride.").

[4] Astrid Galvan, "Document: Arizona tried to illegally import execution drug," Miami Herald (Oct. 22, 2015), http://www.miamiherald.com/news/nation-world/national/article41143878.html ("On Thursday, Texas said it had obtained a license from the U.S. Drug Enforcement Administration to import sodium thiopental.").

[5] Doc. 75-2, Letter from Ohio Department of Rehabilitation & Correction to FDA (Oct. 9, 2015) (Ohio "believe[s] that if a state were to attempt to import thiopental under . . . five conditions [listed above], . .. it would be lawful and permissible for a state to proceed with such lawful importation.").

likelihood that the drug is "readily available" to the ADOC -- especially since the very news articles Brooks cites questioned both the purity and the legality of the imported drugs,[6] reported that federal agents seized Arizona's shipment of the drug and would not "budge[]" on releasing it,[7] and emphasized that many states had not been able to obtain the drug despite repeated efforts.[8]  In addition, the Ohio letter was simply a response to a letter from the FDA "impl[ying] . . . that the importation of sodium thiopental is currently prohibited."[9]  Quite simply, the news articles and letter strongly undermine the claims that Alabama could readily import sodium thiopental and that an execution protocol involving this drug is readily available to be used.

---

[6] See Hammell & Stoddard, supra note 3 ("[A Nebraska state senator] said the state will have to show that the drugs were obtained from a source approved by the U.S. Food and Drug Administration. . . . Ricketts' spokesman . . . said the drugs will be sent to an independent laboratory to be tested for purity.").

[7] See Galvan, supra note 4 ("Arizona and other death penalty states have been struggling to obtain legal execution drugs for several years after European companies refused to sell the drugs, including sodium thiopental, that have been used to carry out executions. . . . Earlier this year, Nebraska was told by the FDA that it could not legally import the drug it needed to carry out lethal injections after the state paid $54,400 for drugs from Harris Pharma, a distributor in India. When [Arizona's lethal injection] drugs arrived via British Airways at the Phoenix International Airport in July, they were seized by federal officials and have not been released, according to the documents. [T]he FDA has not budged.").

[8] Id.

[9] Doc. 75-2 ("[The FDA's letter] impli[ed] . . . that the importation of sodium thiopental is currently prohibited. . . . [I]t is [Ohio's] position that the FDA's apparent belief that [case law] completely prohibit[s] the importation of sodium thiopental grossly overstates what the courts' actual rulings were. . . .").

Although Brooks contends that a single dose of sodium thiopental would constitute an effective lethal injection protocol, we are uncertain whether it has ever been used before as a stand-alone execution drug.  Brooks alleges that "experts [have] stated" that a sufficient dose of sodium thiopental "would cause death without need of a paralytic or potassium chloride," but he cites no support for that allegation.  Furthermore, while he alleges that it was "the primary drug used in three-drug protocols for over a decade," he does not say that it has ever been used as the sole drug in a lethal injection execution.  Without some palpable evidence that sodium thiopental is currently "known and available" to the ADOC and would constitute a viable alternative method of execution -- and Brooks has offered us only two newspaper articles and a letter to the FDA -- there is nothing remotely resembling a showing of a substantial likelihood that Brooks could satisfy this prong of the Glossip test.

Brooks's third proposed alternative is to use midazolam alone, and not in concert with two other drugs.  Alabama already uses midazolam as the first drug in its three-drug cocktail.  And it is undisputed that midazolam is currently available to the ADOC.  But the only evidence that Brooks has provided us regarding the efficacy of a single-drug execution protocol using midazolam is a citation to Glossip, where the Court noted that the district court had found that "a massive 500-milligram dose" of midazolam "will likely cause death in under an hour."

14

Glossip, 135 S. Ct. at 2741 n.4.  Brooks admits in his complaint that a single drug

lethal injection protocol using midazolam "has not previously been used," and

"there are still questions concerning whether the ceiling effect of midazolam would

preclude a fatal dose of the drug."  Still, Brooks alleges that the defendants cannot

justify using the second and third drug in the execution protocol given the

increased risk of pain that they pose.

On this record, Brooks has failed to show a substantial likelihood that a

single-drug execution protocol using only midazolam is a feasible, readily

implementable, and significantly safer method of execution.  For starters, Brooks's

admissions that a midazolam-only protocol has never been used in an execution

and, furthermore, that midazolam's ceiling effect may render it non-lethal deeply

undercut his claim that it is a known, readily implementable, and materially safer

lethal injection alternative.  Given the paucity of Brooks's evidentiary proffer, we

see no likelihood (let alone a substantial likelihood) that he would be able to

establish that a heretofore untested lethal injection protocol involving only

midazolam is materially safer than a protocol that is identical to one approved by

the Supreme Court not seven months ago.  See Glossip, 135 S. Ct. at 2734-35.

Furthermore, there is a fundamental tension in Brooks's argument.  On the

one hand, Brooks seems to concede that midazolam will render him deeply

unconscious and insensate to pain, resulting in a pain-free death.  On the other

hand, he contends that midazolam will not render him sufficiently insensate to pain when followed by an injection of the other two drugs in Alabama's protocol. We do not see how he can argue, without evidentiary support, that midazolam alone can be used to render him unconscious and painlessly kill him, and in the same breath say that the drug ought not be used as the first drug because it will not render him insensate when used with two other drugs. The bottom line is that Brooks has failed to adequately show that a single-injection midazolam protocol is "an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain," when compared to Alabama's current three-drug protocol. Id. at 2737 (quotation omitted).

In short, Brooks has failed to show a substantial likelihood that there is a known, readily available, and materially safer method of execution. Nothing we say should be read as holding that single-injection drug protocols could not offer valid alternatives. Rather, on this record, we hold only that Brooks has failed to show that Alabama's three-drug protocol creates "a demonstrated risk of severe pain" and that "that risk is substantial when compared to the known and available alternatives." Id. The district court did not abuse its discretion in denying the motion for stay.[10]

---

[10] Brooks also argues that, in light of our decision in Arthur v. Thomas, 674 F.3d 1257 (11th Cir. 2012), the district court erred in denying him a stay of execution without first conducting an evidentiary hearing. However, in Arthur, the district court had dismissed the prisoner's

## III.

We are constrained to affirm the district court's denial of Brooks's motion for stay for yet another reason -- there is no substantial likelihood of success on his Eighth Amendment claim because it is, as the district court plainly found, time-barred. It is well settled that "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008). Our precedent makes clear that a "substantial change" is one that "significantly alter[s] the method of execution." Gissendaner, 779 F.3d at 1282.

The statute of limitations applicable to Brooks's Eighth Amendment claim is two years. See Ala. Code § 6-2-38 (1975) (establishing a two-year statute of limitations for personal injury actions); McNair, 515 F.3d at 1173 (holding that courts must look to state's personal injury statute of limitations to determine statute of limitations under § 1983). As the district court detailed, the statute of limitations for Brooks's claim began to run on July 31, 2002, the date that

complaint. See Mann v. Palmer, 713 F.3d 1306, 1316 (11th Cir. 2013) ("In Arthur, the district court had summarily dismissed the inmate's complaint solely on the basis of the statute of limitations . . . and [w]e did not consider whether Arthur had stated a plausible claim under the Eighth Amendment. Nor did we consider whether Arthur could establish that he had a substantial likelihood of success on the merits to warrant a stay of execution."). In this case, we are faced only with the district court's denial of a stay of execution, which requires Brooks to establish a substantial likelihood of success on the merits, and not with the dismissal of a complaint, which would have required him to plausibly allege an Eighth Amendment violation.

17

Alabama changed its method of execution to a three-drug lethal injection protocol. At that time, his state court review had been finalized (since 1997), and Brooks knew that he was subject to execution by lethal injection rather than by electrocution. Therefore, he should have filed his claim by July 31, 2004. He did not, waiting instead until November 2, 2015, to intervene in the Midazolam Litigation.

Brooks argues, however, that Alabama's switch on September 11, 2014, to a protocol using midazolam as the first drug signals a "substantial change" in the protocol that operates to reset the statute-of-limitations clock. We are unpersuaded.

It is undisputed that Alabama has used a three-drug protocol since it began performing executions by lethal injection in 2002. Brooks also admits that potassium chloride has always been the third drug in the protocol, and that the second drug has always been a paralytic -- either pancuronium bromide or rocuronium bromide. But Alabama has changed the first drug twice: From 2002 until April 6, 2011, Alabama used sodium thiopental as the first drug in the three-drug sequence. From 2011 to September 10, 2014, it used pentobarbital as the first drug. And since September 11, 2014, it has used midazolam as the first drug.

The crux of Brooks's argument is that the three-drug protocol Alabama implemented on September 11, 2014, constitutes a substantial change because

18

midazolam as the first drug -- as opposed to pentobarbital or sodium thiopental -- is not an effective analgesic (or pain reliever).  But he has provided no evidence to show that pentobarbital or sodium thiopental would have been any more effective in numbing him against the alleged risk of pain posed by the administration of the second and third drugs, which have remained essentially unchanged since 2002.  Because he has proffered nothing to establish, by a substantial likelihood, that midazolam constituted a "substantial change" from the earlier protocols, we cannot say that the 2014 switch to midazolam triggered a new statute-of-limitations period.

Moreover, as the Supreme Court recognized in Glossip, "numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride."  135 S. Ct. at 2739-40 (citing, e.g., Chavez v. Florida SP Warden, 742 F.3d 1267 (11th Cir. 2014); Howell v. State, 133 So. 3d 511 (Fla. 2014)).  The Supreme Court pointed out that midazolam had been used "without any significant problems" in twelve executions, 135 S. Ct. at 2746, and that testimony from both sides supported the district court's conclusion that midazolam can render a prisoner unconscious and insensate during the remainder of a three-drug procedure, id. at 2741.  Indeed, the very three-drug protocol approved by the Supreme Court in Glossip is the same one Alabama will

19

use here.  Id. at 2734-35.  Brooks has given us no reason to believe that Alabama's use of midazolam in Alabama's three-drug protocol would lead to any different result than it has elsewhere.  Nor, more to the point, has he established a substantial likelihood that the substitution of midazolam for pentobarbital was a "substantial change" to Alabama's protocol, or that it "significantly alter[ed] the method of execution."  Gissendaner, 779 F.3d at 1282.

## IV.

We offer a final comment on the effect of Brooks's delay in bringing a § 1983 method of execution suit on the analysis of his motion for stay of execution.  Injunctive relief, including a stay of execution, is "an equitable remedy that is not available as a matter of right."  Grayson v. Allen, 491 F.3d 1318, 1322 (11th Cir. 2007).  "[T]he equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution claims are equally applicable to requests for both stays and injunctive relief."  Id.; see also Williams v. Allen, 496 F.3d 1210, 1212-13 (11th Cir. 2007).  As the Supreme Court has unanimously instructed on multiple occasions, courts considering whether to grant a stay of execution "must be sensitive to the State's strong interest in enforcing its criminal judgment without undue interference from the federal courts," and "must . . . apply 'a strong equitable presumption against the grant of a stay [of execution] where a claim could have been brought at such time as to allow

20

consideration of the merits without requiring entry of a stay.'" Hill v. McDonough, 547 U.S. 573, 584 (2006) (quoting Nelson v. Campbell, 541 U.S. 637, 650 (2006)). Indeed, "[t]he federal courts can and should protect States from dilatory or speculative suits." Id. at 585.

The district court squarely found that Brooks had exhibited "unreasonable, unnecessary, and inexcusable delay in bringing suit" that prevented his method of execution claim from being adjudicated without granting a stay of execution. Therefore, applying a strong presumption against granting equitable relief, it found that the equities weighed against granting a stay of execution. We review the district court's finding that Brooks's delay was unnecessary and inexcusable for clear error. Grayson, 491 F.3d at 1324-25.

> The district court summarized Brooks's delay this way:
>
> The chronology of Brooks's post-conviction litigation time-line and other significant developments reflect that his November 2, 2015 motion to intervene in the method-of-execution challenge presented in this Midazolam Litigation comes: (1) nineteen months after the U.S. Supreme Court denied certiorari on Brooks's habeas petition; (2) fourteen months after the State of Alabama announced it was changing its execution protocol by substituting midazolam for pentobartital as the first drug administered in the three-drug, lethal-injection sequence; (3) four months after Glossip was decided; (4) five weeks after the State moved (for a second time) to set an execution date for Brooks; (5) a year or more after his co-Plaintiffs filed in the Midazolam Litigation . . . ; and (6) eleven weeks and four days prior to his January 21, 2016 execution date.

Doc. 93 at 30.

Brooks does not challenge any of these facts, but proffers a laundry list of reasons to explain why his delay prior to challenging Alabama's execution protocol should be excused. In short, he argues that he had no reason to challenge Alabama's protocol because other inmates were already litigating Eighth Amendment challenges, and he had "no reason to believe" that the state would seek to execute him while there were ongoing challenges to its execution protocol.

Brooks's speculation that the state would not seek to execute him while others were challenging its protocol does not excuse his lengthy delay in asserting his own rights. On March 24, 2014, the Supreme Court denied certiorari review of the order dismissing Brooks's petition for a writ of habeas court, Brooks v. Thomas, 134 S. Ct. 1541 (2014), which "eliminate[d] the last possible obstacle to [his] execution." Grayson, 491 F.3d at 1325 (quotation omitted). Since then, he was under a sentence of death and had no pending litigation challenging that sentence or the method of execution. Yet for nineteen months, during which time the state twice sought an execution date for him, he did nothing to challenge any execution protocol. Not until five weeks after the state's second motion for an execution date did he seek to intervene in litigation challenging the protocol. Excusing Brooks's delay simply because other inmates were challenging the protocol would mean that inmates have no obligation to timely file in the first instance or intervene in protocol challenges. In reality, every state's method of

22

lethal injection is perennially being challenged.  The district court did not clearly err when it determined that Brooks had unnecessarily delayed in seeking to challenge Alabama's protocol.

Brooks insists, nevertheless, that the state has contributed to the delay in this case and, therefore, it cannot rely on his own unreasonable delay to defeat his motion for a stay.  He first faults the state for trying to "force the District Court to take action" in the Midazolam Litigation, and then accuses the state of attempting to "avoid any type of hearing on the merits of its execution protocol."  However, in its order denying the motion to stay, the district court explained that the decision to delay the hearings in the Midazolam Litigation until April 2016 was needed due to the discovery schedule, and that the delay was not objected to by the plaintiffs.  In essence, Brooks is faulting the state for not accommodating him by waiting to seek an execution date until all outstanding Eighth Amendment challenges by all plaintiffs to its protocol are resolved.  Nothing in the record suggests that the state prevented Brooks from filing a challenge to Alabama's execution protocol or from joining a long-existing challenge at a time when his suit could have been considered on the merits.  The district court did not commit clear error when it found that Brooks was responsible for his delay in seeking to challenge the execution protocol.

Brooks still argues that the equities favor a stay because he will suffer irreparable harm if he is executed, whereas the state will only suffer the minimal inconvenience of having to postpone his hearing until after the Midazolam Litigation evidentiary hearing.  But, as the Supreme Court has recognized, the state, the victim, and the victim's family also "have an important interest in the timely enforcement of [Brooks's] sentence."  Hill, 547 U.S. at 584.  After all, Brooks raped and murdered Jo Deann Campbell on December 31, 1992, and he was convicted of three counts of capital murder by a jury and sentenced to die for his crimes in 1993.  Brooks's delay in asserting his rights undermines his argument because, "[i]f [he] truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule."  Grayson, 491 F.3d at 1326; Jones v. Allen, 485 F.3d 635, 640 (11th Cir. 2007) (subsequent history omitted) (By waiting so long "to file his challenge to the State's lethal injection protocol, Jones leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." (internal quotation marks omitted)).  His delay in challenging the protocol also created a "strong equitable presumption" against granting a stay of execution, Hill, 547 U.S. at 584 (quotation omitted), and he has failed to overcome that presumption.

24

## V.

In sum, Brooks has failed to show a substantial likelihood that he will succeed on the merits of his Eighth Amendment challenge for two reasons. First, he has failed to establish (as he must) a substantial likelihood that there are readily available alternative methods of execution that pose a substantially lower risk of severe pain relative to Alabama's current lethal injection protocol. And second, he has not established a substantial likelihood that his Eighth Amendment claim was brought within the two-year statute of limitations. Finally, given his unnecessary and unjustifiable delay in challenging Alabama's lethal injection protocol, he has not established that the equities favor granting his requested stay. For each of these independent reasons, we are satisfied that the district court did not abuse its discretion in denying Brooks's motion for a stay of execution, and that his emergency motion for stay filed in this Court must be denied.

**AFFIRMED AND MOTION FOR STAY OF EXECUTION DENIED.**