[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17167
_____

D.C. Docket No. 2:12-cv-00316-WKW-CSC


CAREY DALE GRAYSON, et al.,

Plaintiffs,

and

RONALD BERT SMITH, JR.,

Consolidated Plaintiff-Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 7, 2016)

Before TJOFLAT, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Alabama death row prisoner Ronald Bert Smith is scheduled to be executed by lethal injection on December 8, 2016. In April 2016, he filed a complaint in the district court pursuant to 42 U.S.C. § 1983 challenging Alabama's method of execution as cruel and unusual under the Eighth Amendment and its policy prohibiting counsel who is witnessing an execution from having access to a cellular or landline phone as violating his right of access to the courts under the First, Eighth, and Fourteenth Amendments. Smith's case was consolidated with the cases of other Alabama death row prisoners who had asserted similar claims in the "Midazolam Litigation" that was pending in the district court.

On November 18, 2016, the district court dismissed Smith's § 1983 claims as time-barred under the applicable statute of limitations. Smith has appealed that ruling. Although he did not seek a stay of execution in the district court, Smith has filed a motion for a stay of execution in conjunction with his appeal. In light of Smith's impending execution, the Court ordered expedited briefing on the appeal. Having carefully considered the record and the arguments of the parties, we **AFFIRM** the district court's order and **DENY** Smith's motion to stay his scheduled execution.

2

## BACKGROUND

Smith shot and killed a convenience store clerk during a robbery of the store in 1994. *Smith v. State*, 756 So. 2d 892, 901 (Ala. Crim. App. 1997). He was convicted of capital murder and sentenced to death. *Id.* The details of the crime are set forth in the Alabama court's decision on Smith's direct appeal. *See id.* Smith was sentenced to death based on the sentencing judge's determination that the murder was "an execution-style slaying" during which the store clerk was "pistol-whipped and beaten into helpless submission, but Smith nevertheless killed him to avoid later identification" and that Smith was indifferent to or enjoyed the clerk's suffering, bragging and smiling or laughing about the killing when he described it. *Id.* at 950–51. Smith's direct appeal concluded in 2000. *Smith v. Alabama*, 531 U.S. 830 (2000). His state post-conviction and federal habeas proceedings concluded more than a year ago. *Smith v. Thomas*, 134 S. Ct. 513 (2014).

On April 15, 2016, Smith filed a § 1983 complaint challenging under the First, Eighth, and Fourteenth Amendments Alabama's method of execution and its policy denying counsel witnessing an execution access to a cell or landline phone. Smith's complaint contained claims identical to those asserted by other Alabama death row prisoners in the Midazolam Litigation that was pending in the district

3

court. The district court thus consolidated Smith's case with the Midazolam

Litigation for discovery and trial.

Like the other prisoners in the Midazolam Litigation, Smith primarily

challenges the constitutionality of Alabama's three-drug lethal injection protocol.

When Smith was sentenced to death, Alabama executed condemned prisoners by

electrocution. *See Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011). In

July 2002, Alabama adopted lethal injection as its preferred form of execution.[1]

*Id.* Since that time, Alabama has used a three-drug lethal injection protocol. *See*

*Brooks v. Comm'r, Ala. Dep't of Corr.*, 810 F.3d 812, 823 (11th Cir. 2016). The

first drug in the protocol is intended to render the inmate unconscious and prevent

him from experiencing pain during the execution. *See id.* The second drug is a

paralytic agent that inhibits voluntary muscle movements and stops respiration.

*See id.* The third drug interferes with the electrical signals that stimulate heart

contractions and causes cardiac arrest. *See id.*

Currently, Alabama's lethal injection protocol calls for the administration of:

(1) a 500-mg dose of midazolam, (2) followed by a 600-mg dose of rocuronium

bromide, and (3) finally, 240 milliequivalents of potassium chloride. From 2002

until April 2011, Alabama used sodium thiopental as the first drug in the sequence.

---

[1] The legislation implementing this change allowed prisoners already under a sentence of death a 30-day window to choose electrocution as their method of execution, after which time they would be deemed to have waived the right to request a method other than lethal injection. Ala. Code § 15-18-82.1(b). Smith did not exercise his right to choose electrocution as his method of execution.

*See Brooks*, 810 F.3d at 823.  Sodium thiopental became unavailable in 2011, and Alabama began using pentobarbital as the first drug.  *See id.*  Pentobarbital became unavailable in 2014.  *See id.*  Consequently, Alabama announced in September 2014 that it would begin using midazolam as the first drug in its lethal injection protocol.  *See id.*  The second drug in the protocol has always been either pancuronium bromide or rocuronium bromide[2], and the third drug has always been potassium chloride.  *Id.*

At the time Alabama disclosed its intent to use midazolam in 2014, several Eighth Amendment method-of-execution claims already were pending in the district court.  These claims challenged the substitution of pentobarbital for sodium thiopental, and specifically alleged that the protocol Alabama had adopted in 2011 violated the Eighth Amendment because pentobarbital was not an adequate anesthetic.  When Alabama switched to midazolam in September 2014, the court allowed the prisoners in these cases to amend their complaints to assert allegations specific to midazolam.  The district court then stayed these cases pending the United States Supreme Court's decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), which squarely raised the constitutionality of Oklahoma's use of midazolam in a three-drug lethal injection protocol that is materially indistinguishable from Alabama's.

---

[2]  Smith does not allege that there is a material difference between pancuronium bromide and rocuronium bromide.

The Supreme Court issued the *Glossip* decision on June 29, 2015. Like the Alabama prisoners in the Midazolam Litigation, the Oklahoma prisoners in *Glossip* argued that the use of midazolam as the first drug in a three-drug lethal injection protocol created a constitutionally unacceptable risk of pain during an execution because midazolam does not render a person insensate to pain. *Id.* at 2731. The district court had determined that the prisoners were not entitled to a stay of execution based on that claim, because they could not establish a likelihood of success under the Eighth Amendment. *Id.* The Supreme Court affirmed that ruling and clarified in its decision that, in order to prevail on an Eighth Amendment method-of-execution claim, a prisoner must plead and prove that: (1) the challenged execution method is "sure or very likely to cause serious illness and needless suffering" and (2) there is "an alternative [method of execution] that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Id.* at 2737 (quotations and emphasis omitted) (applying *Baze v. Rees*, 553 U.S. 35 (2008)).

After *Glossip*, the district court lifted its stay of the method-of-execution cases pending in its court and consolidated those cases to form the Midazolam Litigation. The court directed the lead plaintiff to file an amended complaint to address *Glossip* and permitted the parties to conduct additional discovery. In February 2016, the State filed a motion for summary judgment on the Eighth

6

Amendment claims asserted by the prisoners who at the time of the State's filing were part of the Midazolam Litigation. The district court granted summary judgment to the State on October 31, 2016, but Smith's claims, which were not filed until several months after the State moved for summary judgment—and indeed approximately a year after the Supreme Court decided *Glossip* and nearly two years after Alabama announced its current lethal injection drug protocol—were not addressed in the summary judgment order.

As noted, Smith filed his § 1983 complaint in April 2016. Smith asserted three claims in his complaint: (1) an Eighth Amendment claim alleging that Alabama's lethal injection protocol constituted cruel and unusual punishment because midazolam would not sufficiently anesthetize him from the painful effects of the other two drugs in the protocol; (2) an Eighth Amendment claim alleging that Alabama's consciousness assessment, performed after administration of the midazolam, was inadequate to ensure he would be properly anesthetized prior to the injection of the second and third drugs, and (3) a First, Eighth, and Fourteenth Amendment claim alleging that Alabama's refusal to allow counsel witnessing his execution access to a cell or landline phone unconstitutionally restricted his access to the courts. Smith's Eighth Amendment midazolam claim was materially indistinguishable from the claims addressed in the district court's October 31, 2016 summary judgment order, and even alleged the same "feasible, readily available"

7

alternatives to Alabama's protocol:  (1) a single dose of sodium thiopental; (2) a single dose of pentobarbital; and (3) a single dose of 500 milligrams of midazolam.[3]

On May 31, 2016, the State moved to dismiss Smith's § 1983 claims as untimely under Federal Rule of Civil Procedure 12(b)(6).  In support of its motion, the State argued that Smith's Eighth Amendment midazolam claim was a general challenge to three-drug protocols, which could have been raised at any time after Alabama began using a three-drug protocol in its executions in 2002 and was thus barred by the applicable two-year statute of limitations.  According to the State, Smith's consciousness assessment and access to the courts claims likewise challenged long-standing policies and were filed outside of the limitations period.

On September 14, 2016, the Alabama Supreme Court set Smith's execution date for December 8, 2016.  Nevertheless, Smith did not file a motion to stay his execution in the district court.  In light of the impending execution, the district court ordered Smith on November 9, 2016 to show cause why the State should not execute him using the alternative method pled in his complaint of a single 500-mg dose of midazolam.  Smith refused to consent to that method of execution unless the court first found Alabama's current protocol unconstitutional and permanently

---

[3]  Smith claimed in briefing to the district court on November 16, 2016 that 500 milligrams is a typographical error and that he meant 2500 milligrams, but he did not move to amend his complaint.

enjoined it, and until he and the court had also approved an alternate protocol for execution with a single dose of midazolam that ensured "all necessary equipment and sufficient training" and accounted for "the fact that a percentage of the population reacts paradoxically to midazolam by becoming agitated rather than sedated."

On November 18, 2016, the district court granted the State's motion to dismiss Smith's claims as untimely. Smith appealed the dismissal to this Court, and, at Smith's request, the Court ordered an expedited briefing schedule. In conjunction with his appeal, Smith filed a motion to stay his December 8, 2016 execution. Because the merits of Smith's appeal and the question whether he is entitled to a stay of execution are intertwined, we consider those issues together.

## STANDARDS OF REVIEW

We review the district court's dismissal of Smith's complaint under Federal Rule 12(b)(6) de novo and apply the same standard as the district court. *Fla. Int'l Univ. Bd. of Tr. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). In assessing the merits of a claim under Rule 12(b)(6) claim, we assume the factual allegations set forth in the complaint are true and construe them in the light most favorable to the plaintiff. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations

omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Dismissal under Rule 12(b)(6) is appropriate on statute of limitations grounds if it

is apparent from the face of the complaint that the claims asserted are time-barred.

*See Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1279 (11th Cir.

2002).

In order to obtain a stay of his scheduled execution, Smith must show that

"(1) he has a substantial likelihood of success on the merits [of his Eighth

Amendment claim]; (2) he will suffer irreparable injury unless the injunction

issues; (3) the stay would not substantially harm the other litigant; and (4) if issued,

the injunction would not be adverse to the public interest." *DeYoung v. Owens*,

646 F.3d 1319, 1324 (11th Cir. 2011). *See also Muhammad v. Sec'y, Fla. Dep't of

Corr.*, 739 F.3d 683, 689 (11th Cir. 2014) (denying a stay of execution where the

prisoner failed to meet this standard). The burden is on Smith to establish each of

these elements. *Mann v. Palmer*, 713 F.3d 1306, 1310 (11th Cir. 2013).

## DISCUSSION

### I.    Smith's Eighth Amendment Midazolam Claim

#### A.    Timeliness

A § 1983 claim is a tort action that is subject to the statute of limitations that

governs personal injury claims in the state where the § 1983 action is filed.

*DeYoung*, 646 F.3d at 1324. The applicable limitations period in Alabama is two

years. *See* Ala. Code § 6-2-38 (establishing a two-year statute of limitations for personal injury actions). An Eighth Amendment method-of-execution claim accrues on the later of "the date on which [the prisoner's] state review is complete, or the date on which the [prisoner] becomes subject to a new or substantially changed execution protocol." *DeYoung*, 646 F.3d at 1325. Smith's state review was complete in 2000. He subsequently became subject to a "new or substantially changed execution protocol" when Alabama adopted lethal injection as its preferred method of execution in July 2002. Absent any other "substantial change" to Alabama's protocol, the two-year limitations period on Smith's method-of-execution claim expired in July 2004, approximately twelve years before he filed his complaint in this case.

Smith argues that the limitations period was reset when Alabama began using midazolam as the first drug in its protocol in September 2014, and that his claim, filed within two years of this substitution, is thus timely. We rejected a similar argument in *Brooks v. Comm'r, Ala. Dep't of Corr.*, 810 F.3d 812, 822–24 (11th Cir. 2016). In *Brooks*, an Alabama prisoner whose claim was part of the Midazolam Litigation appealed the district court's denial of his motion for a stay of execution based on the same Eighth Amendment midazolam claim that is asserted by Smith and other Midazolam Litigation prisoners. *See id.* at 819. We affirmed the district court's denial of a stay, in part because we determined that the

prisoner's claim was time-barred. *Id.* at 822. We noted in our decision that a "substantial change" sufficient to reset the limitations period "is one that significantly alters the method of execution." *Id.* (citing *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1282 (11th Cir. 2015) (quotation marks omitted). Ultimately, we were "unpersuaded" by the prisoner's claim that Alabama's switch to midazolam as the first drug in its protocol constituted such a "substantial change" for two reasons: (1) the prisoner failed to show that midazolam was any less effective than pentobarbital or sodium thiopental "in numbing him against the alleged risk of pain posed by the administration of the second and third drugs, which have remained essentially unchanged since 2002" and (2) the Supreme Court and "numerous other courts" have concluded that midazolam is an adequate substitute for pentobarbital as the first drug in a three-drug lethal injection protocol. *Id.* at 823.

The rationale of *Brooks* applies equally to Smith's Eighth Amendment midazolam claim, which is virtually identical to the claim asserted by the prisoner in *Brooks.* Smith does not point to, nor do we see, any material difference between the claims. Most significantly, Smith, like the prisoner in *Brooks*, failed to allege how the substitution of midazolam is a "substantial change" in Alabama's method of execution sufficient to reset the limitations period. *See Gissendaner*, 779 F.3d at 1282. As we recognized in *Brooks*, the Supreme Court and this Court have

12

indicated that the substitution of midazolam for pentobarbital does not significantly alter a three-drug lethal injection protocol because, similar to pentobarbital, midazolam "render[s] a prisoner unconscious and insensate during the remainder of a three-drug procedure." *Brooks*, 810 F.3d at 823 (citing *Glossip*, 135 S. Ct. at 2734–35).

In addition, we agree with the district court that Smith's allegations pose a general challenge to the use of a three-drug protocol—and the pain caused by the paralytic and the potassium chloride used as the last two drugs in the protocol—rather than to the use of midazolam per se. The gist of Smith's claim is that the State's "continued use of a three-drug protocol . . . is unjustified in light of the fact that there are ready and available alternatives which would significantly reduce the substantial risk of severe pain." In support of the claim, Smith cites (1) the fact that fourteen states have adopted or announced plans to adopt a single-drug protocol and (2) studies recommending that states discontinue three-drug protocols and instead use a single large dosage of a barbiturate because execution team members "typically are not medically trained personnel and administering three drugs creates greater opportunity for error" that would be ameliorated by a one-drug method. Alabama's switch to midazolam has no bearing on these allegations, which Smith could have asserted any time after Alabama instituted lethal injection per a three-drug protocol in July 2002.

13

Smith nevertheless argues that the district court lacked the authority to dismiss his claim without first holding an evidentiary hearing. The question whether a significant change has occurred in a state's execution method is generally a fact-dependent inquiry. *Arthur v. Thomas*, 674 F.3d 1257, 1260 (11th Cir. 2012). However, Smith's allegations concerning midazolam are materially indistinguishable from the allegations that we rejected as untimely in *Brooks*. As such, an evidentiary hearing was not required for the district court to rule on the timeliness issue in this case. *See Gissendaner*, 779 F.3d at 1282 n.8 ("[A] court may dismiss a complaint as untimely—without an evidentiary hearing or discovery—if the allegations and evidence presented are materially the same as those presented in a previous case in which the denial of relief was affirmed."). *See also Mann*, 713 F.3d at 1314 (clarifying that a district court may dismiss a method of execution claim on statute of limitations grounds without taking evidence if a plaintiff fails to plead a plausible basis for finding that a significant change occurred). Thus, we affirm the district court's timeliness ruling.

**B.    Likelihood of Success on the Merits For Purposes of Smith's Motion for a Stay**

To receive a stay of execution, Smith must show a likelihood of succeeding on the merits of his challenge to Alabama's method of execution. Even if we were to assume that Smith's complaint was timely filed, it is still apparent from the face of the complaint that Smith is not likely to succeed on the merits of his Eighth

14

Amendment midazolam claim. As discussed above, to prevail on his claim, Smith must plead and prove that: (1) Alabama's use of midazolam in its execution protocol entails a "substantial risk of severe pain" and (2) there is a "known and available alternative method of execution" that significantly reduces the risk. *Glossip*, 135 S. Ct. at 2731. Again, the burden is on Smith to satisfy each of these prongs. *See Brooks*, 810 F.3d at 820 ("As the Supreme Court explained, it is [the prisoner's] burden 'to identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'") (quoting *Glossip*, 135 S. Ct. at 2737).

As to the first prong, this Court and the Supreme Court have rejected the proposition—fundamental to Smith's claim—that the 500-milligram dose of midazolam administered as the first drug in Alabama's protocol does not sufficiently anesthetize a prisoner and thus subjects him to an unconstitutionally substantial risk of severe pain. *See Glossip*, 135 S. Ct. at 2739–40 (noting that "numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride"); *Brooks*, 810 F.3d at 823 ("[T]he very three-drug protocol approved by the Supreme Court in *Glossip* is the same one Alabama will use here."). These decisions make it clear that it is not just unlikely that Smith will be able to make the showing required by

15

the first prong of *Glossip*, but in fact it is virtually certain that he will be unable to do so.

Likewise, it is apparent from the face of the complaint[4] that Smith most likely will not be able to show that there is a "feasible," "readily available" alternative method of execution that would substantially reduce the risk of an unconstitutional level of pain as required by the second prong of *Glossip*. *See Brooks*, 810 F.3d at 818–22. The alternatives proposed by Smith include: (1) a single dose of pentobarbital; (2) a single dose of sodium thiopental; and (3) a single dose of 500 milligrams of midazolam. As this Court has noted many times, and the Supreme Court reiterated in *Glossip*, both pentobarbital and sodium thiopental are unavailable for use in executions as a result of the advocacy of death penalty opponents. *See id.*; *Glossip*, 135 S. Ct. at 2738. If that were not the case, this litigation would not be before us today.

As to the single-dose midazolam alternative, Smith does not distinguish his proposal from the single-dose midazolam alternative that we concluded in *Brooks* was legally insufficient to meet the second prong of *Glossip*. *See Brooks*, 810 F.3d at 822 (finding "no likelihood . . . that a heretofore untested lethal injection protocol involving only midazolam is materially safer" than Alabama's current

---

[4] Smith makes a facial challenge to Alabama's method of execution; notably, he makes no "as applied" challenge, as did the prisoner in *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. Nov. 2, 2016). Specifically, unlike Arthur, Smith does not allege any health issues unique to him. Instead like Glossip and Brooks, he merely challenges the use of a three-drug protocol for any person being executed.

protocol). Like the prisoner in *Brooks*, Smith does not allege that a midazolam-only protocol has ever been used in an execution and his allegations about the "paradoxical effect" of midazolam undercut his claim that single-dose midazolam is a "known, readily implementable, and materially safer lethal injection alternative." *Id.* at 821–22. Moreover, Smith's expert Dr. Randall Tackett[5] acknowledges in a report attached to Smith's complaint that there is a "paucity of information regarding lethal concentrations of midazolam." Dr. Tackett's statement affirmatively shows that single-dose midazolam is not a "known" alternative that "in fact significantly reduces a substantial risk of severe pain" as required by *Glossip*. 135 S. Ct. at 2737.

The district court relied on all of the above reasons in granting summary judgment to the State as to the lead plaintiff and several other prisoners who joined the Midazolam Litigation prior to Smith and who asserted materially indistinguishable Eighth Amendment midazolam claims. After considering the evidence presented by the prisoners concerning the proposed alternatives, the court concluded that (1) neither pentobarbital nor sodium thiopental is available to Alabama for use in executions and (2) single-dose midazolam is not "a known and available alternative method of execution that would entail a significantly less severe risk" than Alabama's current protocol as required by *Glossip*. The court

---

[5] Dr. Tackett, a pharmacologist and toxicologist, is a professor at the University of Georgia College of Pharmacy.

noted that the uncertainty regarding the efficacy of midazolam as a single-dose lethal injection drug in Dr. Tackett's expert report had not been cleared up by Dr. Tackett's deposition, in which he could merely "guess" that if midazolam were used as the sole agent for lethal injection, he would use the dose indicated in the one published peer-reviewed article on the subject that extrapolates a proposed dose of between 2500 and 3750 based on animal studies.  The court noted that Dr. Tackett's report and opinion failed to support, and in fact undermined, the prisoners' claim that a one-drug protocol using midazolam would result in significantly less risk of substantial pain than Alabama's current protocol.

In his brief motion for a stay of execution, Smith does not address either of the above issues nor does he explain how his Eighth Amendment midazolam claim can be distinguished from similar claims that have been rejected by the Supreme Court, this Court, and many other courts.  Accordingly, Smith has not met his burden to show that a stay of execution is warranted in this case.

## II.    Smith's Eighth Amendment Consciousness Assessment Claim

Smith's Eighth Amendment consciousness assessment claim also is time-barred.  In support of this claim, Smith alleges that the assessment to ensure that a prisoner is unconscious after the administration of the first drug in the protocol—and prior to administration of the second and third drugs—is performed by a correctional officer who lacks the training of an anesthesiologist and does not use

the medical devices ordinarily used to monitor the consciousness of a person undergoing anesthesia for a medical procedure. According to Smith, these deficiencies result in an inadequate procedure for assessing anesthetic depth and raise a risk of pain during an execution severe enough to violate the Eighth Amendment.

Smith does not dispute that Alabama implemented the consciousness assessment procedure in 2007. *See Arthur*, 674 F.3d at 1264 n.1 (Hull, J., dissenting) ("In 2007, Alabama's protocol was modified to add an additional procedural safeguard, namely, a consciousness assessment after the administration of the first drug."). He does not allege that the method of assessing consciousness, or the training and qualifications of the correctional staff who perform the assessment, have changed in any way since the procedure was implemented. Thus, all of Smith's allegations concerning Alabama's consciousness assessment procedure could have been raised in 2007 and were time-barred as of 2009.[6]

Contrary to Smith's argument, his consciousness assessment claim was not revived by evidence attached to his complaint showing that Christopher Brooks— the prisoner whose claim we denied in *Brooks* and who was executed using Alabama's current protocol on January 21, 2016—opened his left eye during the

---

[6] The lead plaintiff in the Midazolam Litigation asserted a similar constitutional challenge to Alabama's consciousness assessment procedure in April 2012. At the very latest, then, the statute of limitations expired on Smith's consciousness assessment claim in April 2014, two years prior to when Smith asserted the claim.

execution. Brooks's execution did not involve any change, much less a significant change, to Alabama's consciousness assessment procedure that Smith challenges in his § 1983 claim. And the fact that Brooks opened one eye during his execution, without more, falls far short of a showing of either a substantial risk of serious pain or a significant change in Alabama's method of execution. *See Glossip*, 135 S. Ct. at 2732–33 (recognizing that "some risk of pain is inherent in any method of execution" and that "the Constitution does not require the avoidance of all risk of pain").

III.    **Smith's Right of Access Claim**

Smith's final claim is that Alabama's refusal to allow attorneys witnessing an execution to have access to a cell phone or a landline denies him access to the courts in violation of the First, Eighth, and Fourteenth Amendments. As with his other claims, Smith fails to allege that any significant change in Alabama's policy as to cell phone or landline access has occurred within the last two years. The State cites a copy of the policy prohibiting cell phones and other electronic equipment for visitors that was posted online in August 2012. Even assuming the policy did not go into effect until that date, Smith's April 2016 claim concerning the policy would be time-barred. Smith again attempts to rely on the fact that Christopher Brooks opened one eye during his execution in January 2016, but that

fact does not establish a significant change in Alabama's protocol sufficient to restart the limitations period.

Smith's right of access claim is also unlikely to succeed on the merits. Smith does not cite, and the Court has not found, any precedent suggesting that Alabama's policy prohibiting witnesses from having cell phone or landline access infringes on the First, Eighth, or Fourteenth Amendments. Smith cites a federal district court decision holding that an inmate had a right to have his counsel view his execution with access to a telephone, but that decision was later vacated by the Sixth Circuit. *See Coe v. Bell*, 89 F. Supp. 2d 962, 967 (M.D. Tenn. 2000), *vacated by Coe v. Bell*, 230 F.3d 1357 (6th Cir. 2000) (vacating district court's order granting injunctive relief as moot because the prisoner had been executed). Moreover, to state a valid right-of-access claim, Smith would have to establish an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351–52 (1996) (explaining that the actual-injury requirement for a right-of-access-claim stems from "the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches"). Smith's request for access to a cell phone or landline is based on the possibility that something might go wrong during his execution, which does not qualify as an "actual injury." *See id.* at 351 (explaining that a prisoner must show that the "alleged shortcomings . . . hindered his efforts to pursue a legal claim"). In short, there is no authority that would

21

permit this Court to intrude into a state-administered judicial execution in the manner proposed by Smith in his right of access claim.

## IV.    Additional Timeliness Concerns

With regard to our denial of Smith's motion for a stay of his execution scheduled for December 8, 2016, we note further that our precedent requires us to "be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Jones v. Allen*, 485 F.3d 635, 638 (11th Cir. 2007). To that end, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring a stay. *Id.* That presumption comes into play here, where Smith's direct appeal concluded in 2000 and he became subject to lethal injection as a method of execution in 2002, but he did not challenge Alabama's method of execution until April 2016.

Even when Alabama added midazolam to its three-drug protocol in September 2014, Smith did not move quickly to challenge the protocol. Neither did Smith immediately act after the following significant events: (1) the issuance of the *Glossip* ruling addressing a materially indistinguishable midazolam protocol in June 2015, (2) the execution of Christopher Brooks per the midazolam protocol in January 2016, and (3) the State's motion on February 26, 2016 asking the Alabama Supreme Court to set an execution date for Smith. By the time Smith

filed his complaint, the Midazolam Litigation had been pending for several years, the parties to the litigation had completed extensive discovery, and the State had filed a motion for summary judgment that ultimately was granted as to the prisoners who were part of the litigation when the motion was filed but that did not address Smith's claim because of his delay in filing it.  Smith has offered no reason for the delay, but if he truly had intended to challenge Alabama's lethal injection protocol, rather than simply delay his execution, "he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule." *Grayson v. Allen*, 491 F.3d 1318, 1326 (11th Cir. 2007).  *See also Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1297–98 (11th Cir. 2016) ("While each death case is very important and deserves our most careful consideration, the fact that [the prisoner] has petitioned us for a stay of execution only at the very last moment, and without adequate explanation, also suggests to us that the equities do not lie in his favor.").

Moreover, Smith never filed a stay of execution in the district court and did not move for a stay of execution in this Court until November 18, 2016.  Based on Smith's reply brief in support of his appeal, his delay in seeking a stay in the district court appears to have been a strategic decision to control the procedural posture of the case when it reached this Court and the standard of review applicable to the district court's rulings.  Smith's refusal to seek a stay of execution

23

earlier in the district court is one more fact suggesting "that the real purpose behind his claim is to seek a delay of [his] execution, not merely to effect an alteration of the manner in which it is carried out." *Jones*, 485 F.3d at 640. As we emphasized in *Brooks,* "federal courts can and should protect States" from such "dilatory . . . suits." *Brooks*, 810 F.3d at 824.

## CONCLUSION

For all of the above reasons, we **AFFIRM** the district court's ruling dismissing Smith's § 1983 claims as time-barred and we **DENY** Smith's motion filed in this Court for a stay of his execution scheduled for December 8, 2016.