[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  17-11879-P

_____

THOMAS D. ARTHUR,

Plaintiff-Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
ANNE ADAMS HILL,
General Counsel, Alabama Department of Corrections, in her official capacity,
HOLMAN CF WARDEN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

Before  GERALD BARD TJOFLAT, Acting Chief Judge, HULL, MARCUS, WILSON, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES and JILL PRYOR, Circuit Judges.[*]

BY THE COURT:

_____

[*] Chief Judge Ed Carnes and Judge William H. Pryor Jr., having recused themselves, did not participate.

1

A member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting a rehearing en banc, it is ORDERED that this case will not be reheard en banc. The motion for a stay of execution is DENIED.

HULL, Circuit Judge, concurring in denial of rehearing en banc:

Only because a dissent has been filed, I write briefly to put this case in the proper context and to set forth why I concur in the denial of rehearing en banc.

Under sentence of death, Thomas Arthur's execution is currently scheduled for May 25, 2017 at 6:00 p.m. CST.  This is Mr. Arthur's eighth scheduled execution[1] and seventh 42 U.S.C. § 1983 case.  Arthur v. Comm'r, Ala. Dep't of Corr., CM/ECF for the Eleventh Cir. Ct. App. no. 17-11879, at 2 (11th Cir. May 24, 2017) (the "Panel Opinion").

This appeal arises in Mr. Arthur's sixth § 1983 case.  Panel Opinion at 2.  As outlined in great detail in this Court's 58-page panel opinion, Mr. Arthur, from 2007–2017, in multiple § 1983 cases, has challenged Alabama's lethal-injection execution protocol, including the three drugs to be administered in the execution, its substitution of midazolam as the first drug, its consciousness checks, and virtually every feature of Alabama's execution procedures.  Panel Opinion at 8-12.

### Mr. Arthur's Previous § 1983 Cases

Notably, Mr. Arthur's third § 1983 method-of-execution litigation lasted for over five years.  Panel Opinion at 9.  In April 2011, Alabama switched the first drug in its lethal-injection protocol from sodium thiopental to pentobarbital.  See

---

[1] Alabama previously scheduled Mr. Arthur's execution for:  (1) April 27, 2001; (2) September 27, 2007; (3) December 6, 2007; (4) July 31, 2008; (5) March 29, 2012; (6) February 19, 2015; and (7) November 3, 2016.  See Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1274, 1275 n.2 (11th Cir. 2016).

3

Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1275 (11th Cir. 2016) ("Arthur"). Two months later, Mr. Arthur filed a new § 1983 complaint challenging this pentobarbital-based protocol. Id.

In September 2014, Alabama switched to midazolam. Id. at 1276. Mr. Arthur twice amended his complaint in his third § 1983 case to challenge midazolam and Alabama's execution protocol involving midazolam. Id. at 1275-78.

In the instant appeal in this sixth § 1983 case, this Court's panel opinion recounts the variety of just some of Mr. Arthur's claims in that third § 1983 litigation because Mr. Arthur did not raise his current "telephone-in-the-viewing-room claim" during that five-year challenge to Alabama's execution protocol in that third § 1983 lawsuit. Panel Opinion at 9-10. Instead, Mr. Arthur raised this telephone claim only in this current sixth § 1983 case (which, as explained below, is now time-barred). See Panel Opinion at 15-16.

But back to Mr. Arthur's third § 1983 case. After holding a two-day bench trial in January 2016 regarding midazolam, the "pinch test," medical monitoring, and many other § 1983 claims about Alabama's execution procedures, the district court issued two dispositive orders in Mr. Arthur's third § 1983 case. Arthur at 1278, 1283, 1296. In its first order, the district court determined that the Alabama Department of Corrections ("ADOC") was entitled to judgment on Mr. Arthur's

4

facial method-of-execution and Equal Protection challenges. Id. at 1283-86. In its second order, the district court denied relief on Mr. Arthur's many as-applied challenges to ADOC's method of execution as applied to Mr. Arthur personally. Id. at 1296-98. As a result, in July 2016, the district court entered final judgment on Mr. Arthur's third § 1983 case raising multiple challenges under the Eighth Amendment, and Mr. Arthur timely appealed to our Court. Id. at 1298.

On November 2, 2016, this Court affirmed the district court's final judgment in Mr. Arthur's third § 1983 case, rejecting his various challenges to Alabama's execution protocol, including, but not limited to, Alabama's use of midazolam as the first drug in the three-drug lethal injection series and his request for a firing squad to execute him. Id. at 1303-04, 1315-17. After exhaustively reviewing the evidence submitted by both Mr. Arthur and ADOC in that third § 1983 case, this Court's 140-page opinion determined, among other things, that the district court had not met his burden of demonstrating that, as applied to him, Alabama's lethal injection protocol was "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers," the showing demanded by the Supreme Court. Id. at 1312 (quoting Glossip v. Gross, 576 U.S. ___, ___, 135 S. Ct. 2726, 2737 (2015)).

On February 21, 2017, the United States Supreme Court denied Mr. Arthur's petition for a writ of certiorari in that five-year § 1983 litigation. Arthur v. Dunn,

5

137 S. Ct. 725 (2017). On April 24, 2017, the United States Supreme Court denied Mr. Arthur's petition for rehearing. Mr. Arthur has exhaustively litigated his § 1983 Eighth Amendment claim and many other claims for 25 years in state and federal courts. Arthur at 1274-78 (recounting litigation history).

### Statute of Limitations in Sixth § 1983 Case

This brings us to the background of ADOC's telephone prohibition, which is the subject of this appeal in Mr. Arthur's sixth § 1983 case. As also outlined in great deal in this Court's panel opinion, Mr. Arthur's telephone-in-the-viewing-room claim, brought only in his sixth § 1983 case, is barred by the statute of limitations. Panel Opinion at 20-25.

The parties agree that Mr. Arthur's § 1983 telephone-in-the-viewing-room claim is subject to a two-year statute of limitations. Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011) (per curiam); Ala. Code § 6-2-38. To be clear, Mr. Arthur has not requested that his designated execution witness have access to a telephone somewhere else in the prison or even adjacent to the execution viewing room. See Panel Opinion at 3. The § 1983 complaint and briefs explicitly request a telephone inside the viewing room. Panel Opinion at 3. The problem in this appeal for Mr. Arthur is the statute of limitations that applies to the claim in his sixth § 1983 case. Specifically at issue is when the statute of limitations period began to run on Mr. Arthur's claim that Alabama's telephone prohibition for his

6

friend-witness in the viewing room violates the First Amendment right of access to the courts to bring a potential underlying Eighth Amendment claim during his execution. While federal courts borrow the statute of limitations period from state law, "the accrual date of a § 1983 cause of action is a question of federal law." Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007).

Regardless of whether Mr. Arthur's claim is best analyzed under the method-of-execution or the access-to-courts framework, this Court's panel opinion concluded that the statute of limitations began to run when the ADOC telephone prohibition at issue was enacted on August 1, 2012, because at that point Mr. Arthur knew or should have known of the injury for which he seeks relief. Panel Opinion at 22; see Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (per curiam) (concluding that the statute of limitations for an access-to-courts claim begins to run "only when the plaintiffs knew or should have known that they have suffered injury to their right of access and who caused it"); McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008). Given Mr. Arthur's extensive challenges to so many aspects of ADOC's rules and protocols, our Court's panel opinion agreed with the district court's ruling that August 1, 2012 was the point at which Mr. Arthur knew or should have known of the putative injury to his right of access. Panel Opinion at 22; see Chappell, 340 F.3d at 1283. And in its careful review, this Court's panel opinion reasoned that, even assuming arguendo that the two-year

7

statute of limitations did not begin to run until ADOC switched to midazolam as the first drug in September 2014, it still expired by September 2016, and Mr. Arthur's sixth § 1983 lawsuit was filed too late. Panel Opinion at 22.

## Narrow Scope of This Appeal

The narrow scope of this appeal is also important to context. As discussed in this Court's panel opinion, Alabama Code § 15-18-83 restricts execution witnesses to relatives or friends of Mr. Arthur. In this appeal, Mr. Arthur has not made a claim that § 15-18-83 is unconstitutional. Panel Opinion at 4-5. In this appeal, Mr. Arthur has not made a claim that he has a constitutional right under the Sixth Amendment or Fourteenth Amendment to have his counsel present as a witness in the execution viewing room. Panel Opinion at 4 & n.4, 5, 19, 38. Accordingly, this Court's panel opinion did not address such claims, nor did the panel opinion address the more general question of whether Mr. Arthur retains a right of access to the courts during his execution. Panel Opinion at 4 & n.4, 19. Indeed, the panel opinion proceeded under the assumption that Mr. Arthur does have a right of access during his execution. Panel Opinion at 20-25. But there were insurmountable statute of limitations problems for Mr. Arthur as discussed in more detail in the Court's panel opinion. Panel Opinion at 21-25.

Furthermore, this Court's panel opinion emphasized that Mr. Arthur failed to cite any authority standing for the proposition that visitors in an Alabama

8

correctional facility (which is what Mr. Arthur's designated witness, an attorney, will be under Alabama law when witnessing his execution) have any independent constitutional right to telephone access inside the execution viewing room. Panel Opinion at 33. And again, Mr. Arthur never challenged the constitutionality of the relevant Alabama law. Panel Opinion at 4-5.

For these and the other reasons outlined in this Court's panel opinion, I concur in the denial of rehearing en banc in Mr. Arthur's sixth § 1983 case as to his eighth scheduled execution.

MARTIN, Circuit Judge, dissenting to the denial of rehearing en banc:

A judge of this court asked for en banc consideration of Thomas Arthur's access to the court claim. A majority of judges has now voted against en banc review. I would have preferred for the whole court to consider Mr. Arthur's claim, so I respectfully dissent.

The State of Alabama plans to execute Mr. Arthur tonight. Mr. Arthur has made the quite modest request of Alabama that his attorney, who will be with him when the State takes his life, be allowed to have a telephone with her at the time of Mr. Arthur's execution. This is so the lawyer would have a way to contact the courts if something goes wrong. There are reports from recent executions about problems resulting from the administration of lethal injection drugs. Still, Alabama has denied Mr. Arthur's request. I don't know whether Alabama's refusal to allow possession of a telephone rises to the level of a violation of Mr. Arthur's "constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498 (1977). Nevertheless, I vote with my colleagues who want to consider this issue en banc, so we can give it proper consideration.

Judges on the United States District Court and this Court have spent countless hours considering and debating Mr. Arthur's simple request. See Arthur v. Comm'r, Ala. Dep't of Corr., No. 17-11879, ___F. App'x ___ (11th Cir. May 24, 2017) (unpublished); Grayson v. Warden, No. 16-17167, ___F. App'x ___

10

(11th Cir. Dec. 7, 2016) (per curiam) (unpublished); <u>Arthur v. Dunn</u>, No. 2:16-cv-00866-WKW (M.D. Ala. Apr. 12, 2017); <u>Grayson v. Dunn</u>, No. 2:12-cv-00316-WKW, 2016 WL 6832630 (M.D. Ala. Nov. 18, 2016).   Other states allow attorney witnesses to use a phone during their client's execution,[1] and I can't think of any good reason for Alabama's policy prohibiting telephone access.   Neither, to my mind, has Alabama given any explanation for why its policy is necessary.[2]   Having gotten no discernable explanation from Alabama about why it needs to deny a lawyer a phone as she witnesses her client's death, I am hard pressed not to see the refusal as unreasonable and an unbecoming use of the State's power.   Of course we don't know what will happen during Mr. Arthur's execution tonight.   Yet we do know with full certainty that Alabama's telephone policy will completely foreclose Mr. Arthur's access to the courts if the worst should happen.   It may be that Alabama can, consistent with the Constitution, block Mr. Arthur's ability to seek judicial relief from a botched execution by cutting off all lines of communication.

---

[1] <u>See</u> Ariz. Dep't of Corr., Department Order Manual, Order 710.13 (1.5.1.3) (Oct. 23, 2015) (allowing attorney execution witness to access a mobile phone "in exigent circumstances"); Ohio Dep't of Rehab. & Corr., No. 01-COM-11, § VI.G.2 (Oct. 7, 2016) (allowing attorney execution witness "free access" to a phone).   Arizona and Ohio allow telephones by regulation.   There has been no time to investigate since the panel issued its opinion last night, but I assume that other states allow telephones as a matter of routine, even where no regulation expressly permits it.

[2] In Alabama's District Court filings in Mr. Arthur's case, the State simply offers the conclusion that the regulation prohibiting telephones is "reasonably related to legitimate penological interests."   In the State's pleadings in this Court, it implies that counsel with a telephone could result in courts interfering with the execution.   I do not read either of these references to explain the necessity for separating counsel from a phone during an execution.

11

But even if the Constitution allows Mr. Arthur's counsel to be held incommunicado, is it wise?

I also voted to hear this case en banc, because I am troubled by an idea floating through the filings of the State of Alabama, as well as this court's Majority opinion denying Mr. Arthur's claim. That idea is, if we allow counsel for an inmate to have a telephone, the courts may receive "contradictory claims" from the prison while the execution is going on. Maj. Op. at 32 n.13; see Appellee Br. 26–28; Arthur, No. 2:16-cv-00866-WKW, D.E. 18 at 13–14 (M.D. Ala. Nov. 23, 2016). But the very reason courts exist as one of the three branches of our government is to hear "contradictory claims" and decide the merits of those claims. I suppose it could make things easier for judges to say that hearing "contradictory claims" makes things too complicated, so we will simply make it impossible to receive the account from one party or the other. I reject this view, which elevates the impact on judges above whatever rights Mr. Arthur is accorded in the process of the State taking his life. It is safe to presume that the State of Alabama will have access to the phones in the prison where it will put Mr. Arthur to death tonight. Mr. Arthur only seeks the same. If there is a dispute about whether something untoward or maybe even unconstitutional is going on during his execution, it is the job of the courts to resolve that dispute.

For these reasons, I respectfully dissent from deciding the issues Mr. Arthur raises here in an unpublished opinion issued by a divided panel of this Court. I would hear this case en banc.