[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
MAY 10, 2012
JOHN LEY

_____

No. 09-11716

_____

D. C. Docket No. 03-01912-CV-LSC-JEO

CHRISTOPHER LEE PRICE,

Petitioner-Appellant,

versus

RICHARD F. ALLEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 10, 2012)

Before TJOFLAT, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

We previously issued an opinion in this case, Price v. Allen, No. 09-11716,

slip op. (11th Cir. March 30, 2012). On Price's motion for panel rehearing, we hereby vacate our earlier opinion and substitute this one in its place to more fully address Price's claim regarding the prosecutor's statements on future dangerousness during the penalty phase of his trial.

Christopher Lee Price appeals from the denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Price was convicted on February 5, 1993 for the capital felony murder of William Lynn, a minister in the small town of Fayette County, Alabama, that occurred during the course of a robbery at Lynn's home. A detailed description of the facts of this crime can be found in the Alabama state court's decision in Price's direct criminal appeal. See Price v. State, 725 So. 2d 1003, 1011-12 (Ala. Crim. App. 1997). Price was tried and found guilty for capital murder and robbery and the jury voted ten to two to recommend a death sentence for the murder, which the state trial court followed, sentencing Price to death. On direct appeal, the Court of Criminal Appeals of Alabama[1] and Alabama Supreme Court[2] affirmed Price's conviction and sentence, and the United States Supreme Court denied certiorari

---

[1] Price v. State, 725 So. 2d 1003 (Ala. Crim. App. 1997).

[2] Ex parte Price, 725 So. 2d 1063 (Ala. 1998).

2

review.[3]

Price commenced his state habeas court proceedings by filing a petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Upon the state's motion and after having the opportunity to amend his petition, the state habeas court dismissed Price's petition in part and denied it in part, which the Alabama Court of Criminal Appeals affirmed. The Alabama Supreme Court denied certiorari review.

Concurrent with his request for discretionary review in the Alabama Supreme Court, Price filed in federal court for a writ of habeas corpus, which was stayed until the conclusion of his state habeas proceedings. Upon review by the district court, Price's federal habeas petition was denied in part and dismissed in part. We granted Price's request for a Certificate of Appealability on the following issues:

- whether the state trial court erred in denying Price's motion for a change of venue;

- whether Price's counsel was ineffective in litigating a change of venue motion;

- whether the prosecution's comments during the penalty phase about Price's future dangerousness constituted reversible error;

---

[3] Price v. Alabama, 526 U.S. 1133 (1999).

- whether Price's counsel was ineffective during the penalty phase of his trial; and

- whether the district court erred in denying Price's request for an evidentiary hearing.

## II. APPLICABLE STANDARDS OF REVIEW

We review the district court's conclusions on legal questions and mixed questions of law and fact de novo and its factual findings for clear error. Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009), cert. denied, 130 S. Ct. 3399 (2010). However, our review of a state court's decision[4] is limited by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1218 (1996). See 28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 402-03 (2000).

Under AEDPA, we accord a presumption of correctness to a state court's factual findings. 28 U.S.C. § 2254 (e)(1) ("A determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). We therefore grant habeas relief to a petitioner challenging a state court's factual

---

[4] When the last state court rendering judgment affirms without explanation, we presume that it rests on the reasons given in the last reasoned decision. Ylst v. Nunnemaker, 501 U.S. 797, 803-805 (1991); Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1316-17 (11th Cir. 2006). The last reasoned decision in this case on Price's claim regarding his motion for a change of venue was the appellate court's decision on direct appeal and as to all other issues was the appellate court's review of the Rule 32 trial court's decision.

4

findings only in those cases where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d)(2); see also Wiggins v. Smith, 539 U.S. 510, 528-29 (2003).

AEDPA similarly constrains our review of legal questions decided on the merits in state court.  Under the statute, we cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless:

> [T]he adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).  The Supreme Court has further explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

## III.  CONVICTION

Price argues that his Sixth and Fourteenth Amendment rights to an impartial jury were violated when the state trial court denied his request for a change of venue, and that his trial counsel was ineffective in litigating his request seeking a change of venue. He argues that the circumstances of the crime, the nature of the local community, and the surrounding pre-trial publicity were sufficient to trigger a presumption of jury prejudice necessitating a change of venue. He also seeks an evidentiary hearing in federal court on these claims.

As to the denial of Price's motion for a change of venue, we review the state appellate court's decision on direct appeal which affirmed the trial court's denial of this motion. We must determine whether that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d).

The Fourteenth Amendment protects a defendant's Sixth Amendment right to have his case decided by an impartial jury, Irvin v. Dowd, 366 U.S. 717, 722 (1961), and a defendant may request a "transfer of the proceeding to a different district . . . if extraordinary local prejudice will prevent a fair trial—a basic requirement of due process," Skilling v. United States, 561 U.S. ___, 130 S. Ct.

6

2896, 2913 (2010) (quotation marks and citation omitted). The Supreme Court has stated that an impartial jury, however, is not one in which the jurors must be totally ignorant of the facts and issues involved in the case. Irvin, 366 U.S. at 722. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Id. at 723.

In deciding whether a defendant should have been granted a change of venue based on a presumption of juror prejudice–as Price here argues he was entitled to–, a court must consider the "totality of circumstances that [a defendant's] trial was not fundamentally fair." Murphy v. Florida, 421 U.S. 794, 799 (1975). Most recently in Skilling, the Supreme Court explained that in each of its cases where it had overturned a conviction due to a presumption of prejudice, those "conviction[s] [had been] obtained in a trial atmosphere that [was] utterly corrupted by press coverage." 130 S. Ct. at 2914. The Court reiterated that its decisions, however, "cannot be made to stand for the proposition that juror exposure to . . . news accounts of the crime . . . alone presumptively deprives the defendant of due process." Id. (quoting Murphy, 421 U.S. at 798-99).

The Court in Skilling noted several factors that have been pertinent to its determination of whether a presumption of juror prejudice has existed in its prior decisions.  First, it pointed out that its decisions have emphasized "the size and characteristics of the community in which the crime occurred" and their impact on the ability to convene an impartial venire.  Id. at 2915.  The Court has considered whether the associated media coverage has included a "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight."  Id. at 2916 (citing Rideau v. Louisiana, 373 U.S. 723 (1963), in which a local television station broadcast, on three separate occasions just before trial, the filmed interrogation and confession of the defendant).  The Court also has taken into account the length of time that has elapsed from the crime until the trial and the degree of media coverage during that time.  Id.; see also Patton v. Yount, 467 U.S. 1025, 1032-33 (1984) ("[T]he record of publicity in the months preceding, and at the time of, the second trial does not reveal the barrage of inflammatory publicity immediately prior to trial, amounting to a huge . . . wave of public passion[.]") (internal quotation marks and citations omitted).

Upon direct review of the trial court's denial of Price's request for a change of venue, the state appellate court noted that Price submitted a number of newspaper articles from the Fayette County *Times-Record* and the *Tuscaloosa News* that had

8

been published about one year before the beginning of Price's trial.  Price v. State,

725 So. 2d at 1051.  The state court found that the articles were neither

"inflammatory nor prejudicial" to Price and did not so saturate the community as to

impact the prospective jurors, so that there was no basis to overrule the state trial

court's denial of the request for a change of venue.  Id. at 1051-52.

We conclude that the state appellate court's decision was not contrary to or

an unreasonable application of Supreme Court precedent regarding the presumption

of prejudice necessary for a change of venue.  The nine news articles submitted to

the state court in support of the change of venue at Price's trial had been published

within weeks of the crime, the last of which was published more than a year before

Price's trial.  Price did not submit to the trial court any articles that had been

published near to or during the trial, and the articles he submitted did not contain

anything equivalent to a confession or blatantly prejudicial information that

weighed in favor of a finding of prejudicial pre-trial publicity.[5]

Price next argues that his trial counsel was ineffective in litigating the motion

_____

[5] Price argues that the state appellate court applied the wrong principle to his change of venue claim and thus its decision was necessarily "contrary to" clearly established federal law and we should therefore review this claim de novo.  We disagree with Price's argument that because the court's analysis only addressed the impact of the newspaper articles, and did not explicitly evaluate his arguments about the local community sentiment, it necessarily applied the wrong legal principle to this claim.  The state court laid out the relevant Supreme Court and state court decisions on the presumption of prejudice and there is nothing in its decision that would lead up to conclude that it did not apply the correct federal law.

for a change of venue and requests a federal court hearing on this claim. In his Rule 32 Petition, Price alleged that although his trial counsel filed a motion for a change of venue, counsel did not seek expert assistance to investigate the saturation of the local community with accounts of the crime, did not support the motion with a legal memorandum and did not sufficiently explore the jury's partiality during voir dire. The Rule 32 trial court denied this claim, which the state appellate court affirmed concluding that Price failed to "state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984)," because he did not allege how his trial counsel was deficient or how the outcome of the trial would have been different had trial counsel performed differently.

> Under Strickland v. Washington, trial counsel is ineffective when:
>
> First, . . . counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, . . . the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). To be found deficient, trial counsel's performance must be "outside the wide range of professionally competent assistance." Id. at 690. Professionally competent assistance includes a duty to conduct a reasonable investigation. Id. at 690-91. The Court has emphasized that only when counsels' choices are made after a "thorough investigation of law and facts relevant to

10

plausible options" are those choices "virtually unchallengeable." Id. at 690. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. Thus, at bottom, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." Id. at 691. This means that when we assess the attorney's decision not to investigate, we "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." Wiggins, 539 U.S. at 527. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

We cannot say that the state appellate court's resolution of this claim was contrary to or an unreasonable application of Strickland. Although Price argues that his trial counsel was ineffective in her litigation of the motion for a change of venue, he failed to allege or present any facts in his Rule 32 Petition in support of a finding of the presumption of prejudice that his trial counsel had not already

11

presented at the time she argued this motion during Price's trial. Accordingly, we are unable to conclude that Price's trial counsel was deficient in her investigation of this motion or that any such alleged deficiency prejudiced him, and thus we cannot say that the state appellate court's dismissal of this claim was contrary to or an unreasonable application of Supreme Court precedent.[6]

## IV. SENTENCING

A. Ineffective Assistance of Counsel During Sentencing

Price argues that he received ineffective assistance of counsel during the penalty phase of his trial in violation of his Sixth Amendment rights based on his trial counsel's failure to investigate his background for mitigation evidence. Price specifically alleged in his Rule 32 Petition that his trial counsel did not conduct any background investigation even though he had numerous cousins, aunts, uncles, grandparents, friends and school teachers in the immediate vicinity who could have provided insight into his upbringing and background. He also alleged that his trial counsel failed to retain a mental health expert for purposes of exploring the impact of his upbringing on the crime, even though his trial counsel asked for and obtained $2500 from the state to retain an expert for this purpose. Price argues that the cumulation of these deficiencies in his trial counsel's performance, along with his

---

[6] For the same reasons, we deny Price's request for an evidentiary hearing on this issue.

12

mother's cursory penalty phase testimony,[7] prejudiced him by leaving the jury with

an incomplete, inaccurate and inadequate depiction of his personal history and the

effect his upbringing had on his mental status at the time the crime occurred.

With regard to Price's claim that he received ineffective assistance of counsel

in the penalty phase of his trial, the Rule 32 court concluded, without the benefit of

an evidentiary hearing, that Price "failed to state a claim of ineffective assistance of

counsel under Strickland v. Washington, 466 U.S. 668 (1984)," which the state

appellate court affirmed.  Because the state court resolved this claim on a motion to

dismiss, without taking evidence, we review the merits of this claim based on the

record before the state appellate court, which in this case consists of the allegations

in Price's Rule 32 Petition. See Cullen v. Pinholster, 131 S.Ct. 1388 (2011) and

Borden v. Allen, 646 F.3d 785 (11th Cir. 2011).

The state appellate court concluded that Price's trial counsel made a

_____

[7] Price has also alleged that his trial counsel failed to prepare its only penalty phase witness, Price's mother Judy Files, for testifying.  His trial counsel presented no evidence in mitigation other than Files, who testified on direct examination for a total of about fifteen minutes.  For the most part, Files's testimony consisted of her non-descript and minimally detailed responses to the often leading questions posed by Price's trial counsel.  She testified that she and Price had been physically abused by Price's father until they left him and moved to Texas.  Price was subsequently physically and verbally abused by a later boyfriend of Files and then by Files's next husband.  Files also testified that Price was a polite and respectful child who did what she told him to, went to school regularly, and had a job while in high school.  Price alleges that this testimony provided a starkly incomplete picture of his background, lacked any expert insight into what effect his upbringing might have had on his mental status and was presented without the benefit of a thorough background investigation. The state appellate court concluded that defense counsel adequately questioned Files and that it was a reasonable sentencing phase strategy for Price's trial counsel to rely exclusively on the testimony of Files.

13

reasonable strategic decision not to retain a mental health expert because the court-ordered psychologist, Dr. Karl Kirkland, had opined that Price was competent to stand trial and was not insane. The state appellate court explained that "a reasonable attorney could decide not to call a psychologist" and instead "allow the jury to draw its own conclusions regarding the circumstances of Price's childhood based on Mrs. Files's description of Price's childhood without opening the door for the State to present the opinion of Dr. Kirkland."

Additionally, the state appellate court found that Price had not sufficiently alleged prejudice. Price's allegations, the court reasoned, did not show that better preparation of Files would have elicited any mitigating evidence that might have changed the trial's outcome. The court also found that Price's allegations did not show that contacting Price's relatives, friends, and teachers or seeking school records would have turned up evidence sufficient to create a reasonable probability of a different outcome. Price's paternal grandmother's testimony, in particular, would have been cumulative, the court explained, because the evidence counsel introduced at the penalty phase—Files's testimony—already revealed that Price had suffered abuse as a child.

To prevail on his ineffective assistance of counsel claim for failure to investigate mitigation evidence, Price first must show that his counsel's

14

performance was deficient, i.e. that it "fell below an objective standard of reasonableness," see Strickland, 466 U.S. at 688, and second he must establish that the deficiency prejudiced him, id. at 687. Prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

We need not address whether Price's trial counsel was deficient in failing to conduct an investigation of Price's background for mitigation evidence because we cannot say that the state appellate court's application of Strickland's prejudice standard was unreasonable. Price alleged in his Rule 32 Petition, and in the amendment thereto, that had his trial counsel conducted an adequate investigation of his background, the following evidence would have been available to present to the jury: His mother "would have been able to provide many details about Mr. Price's life, upbringing, and character that were not otherwise presented to the jury and the Court, but which would have been relevant mitigation evidence." His numerous other family members and friends would have discussed "a detailed history of dislocation, abuse and neglect that far exceeded the terse, incomplete description provided by Mrs. Files at Mr. Price's sentencing." They would have "testified about their love for Mr. Price and of the pride they shared in his

15

extraordinary drawing skills."  His friends would also have described Price as a "nice kid who did not get in fights" and that he "was known to be a follower who would go along with what other people wanted to do."  His school records would have revealed that he "did well in school and was generally well-behaved in class." Finally, Price alleged that an independent psychologist would have revealed that "the abuse and neglect Mr. Price suffered from an early age at the hands of his father and mother had a direct and specific impact on his character and personality as a young man."

We, however, cannot say that had these allegations been before the jury that there is a reasonable probability that the outcome of Price's sentencing would have been different.  Although the state appellate court did not consider whether Price was prejudiced by his counsel's failure to retain a mental health expert, we cannot say, even if reviewing this claim without AEDPA's added deference,[8] that the failure prejudiced Price.  On Strickland's prejudice prong, Price has offered no more than a conclusory assertion that a mental-health expert could have testified to a connection between the abuse Price suffered as a child and his subsequent actions. See e.g. Powell v. Allen, 602 F.3d 1263, 1275 (11th Cir. 2010) (finding no

---

[8] See Rompilla v. Beard, 545 U.S. 374, 390 (2005) (holding that when state court addresses only deficient performance element of two-part Strickland analysis, federal court review of prejudice element is de novo).

16

prejudice where petitioner failed to allege the existence of an expert report, or what, specifically that expert's report would reveal about the petitioner's mental status).

As to the allegations regarding the evidence that his friends, family members and school records would have revealed, we also find them to be too general and conclusory to be able say that there is a reasonable probability that this evidence would have changed the outcome of Price's sentencing. Although he alleges that his family members would have testified to more specific instances of abuse than did his mother, he does not give any indication of their nature or number such that we could say a jury that learned about these instances would have recommended a life sentence. Likewise, we cannot say that a jury would have rendered a different sentence had it heard from Price's friends and family of their love for him and that he was a good kid where Price's mother already testified to essentially these same facts at Price's sentencing hearing.[9]

---

[9] We note, however, that this would be a different case if Price had alleged facts showing that the undiscovered instances of abuse he suffered were more severe or pervasive than Files's testimony suggested or had he alleged what specifically a mental health expert would have said about his mental status. Cf. Williams v. Allen, 542 F.3d 1326, 1342 (11th Cir. 2008) (finding prejudice where a post-conviction evidentiary hearing revealed numerous instances of abuse, undiscovered by trial counsel, that "paint[ed] a vastly different picture of [the petitioner's] background than that created" by the limited evidence of abuse introduced at the penalty phase of the trial); id. at 1331–34 (detailing the evidence of abuse introduced during the post-conviction proceedings). While we recognize that Price was not required to allege facts in his petition that would have been equivalent to the type of proof that one would expect in an evidentiary hearing, because our review of the state court's resolution of his Strickland claim is limited to the record before the state court, see Pinholster, 131 S. Ct. at 1398, we are bound to review the merits of his claim given the allegations in his Rule 32 Petition, because the state court ruled on his claim without the benefit of an evidentiary hearing.

B.    Prosecution's Future Dangerousness Argument

Price argues that the prosecution made improper statements regarding his future dangerousness during its penalty phase closing arguments in violation of Price's Eighth Amendment and Due Process rights.  The state court concluded that the prosecutor was not arguing that Price would kill again unless sentenced to death, but rather was arguing that a death sentence for Price would be a deterrent to other would-be offenders.  Price v. State, 725 So. 2d at 1044.

Even assuming that the prosecution's statements were improper, to obtain habeas relief, Price must show that "there has been a violation of due process," which "occurs if, but only if, the improper argument rendered the sentencing stage trial fundamentally unfair."  Romine v. Head, 253 F.3d 1349, 1366 (11th Cir. 2001).  "An improper prosecutorial argument has rendered a capital sentencing proceeding fundamentally unfair if there is a reasonable probability that the argument changed the outcome, which is to say that absent the argument the defendant would not have received a death sentence."  Id. (internal citation omitted).  "In determining whether arguments are sufficiently egregious to result in the denial of due process, we have considered the statements in the context of the entire proceeding, including factors such as: (1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by

18

defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors." Land v. Allen, 573 F.3d 1211, 1219–20 (11th Cir. 2009).

Considering the prosecution's statement in the context of the overall proceedings, we do not find that it rendered the sentencing phase fundamentally unfair. Price's trial counsel did not make any contemporaneous objection to the statement and the statement itself was isolated and also arguably made in the context of an argument for general deterrence, thereby tempering its impact. Accordingly, we cannot say that there is a reasonable probability that absent the prosecution's statement Price would not have received a death sentence, and therefore deny habeas relief on this claim.

## V. CONCLUSION

Accordingly, we AFFIRM the district court's denial of habeas relief on Price's claims regarding (1) his motion for a change of venue; (2) his trial counsel's effectiveness in litigating the motion for a change of venue; (3) the prosecution's statements during the penalty phase; and (4) his trial counsel's effectiveness at the penalty phase of his trial.

AFFIRMED.

19