[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11396
_____

D.C. Docket No. 1:14-cv-00472-KD-C


CHRISTOPHER LEE PRICE,

Plaintiff - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
HOLMAN CF WARDEN,
ATTORNEY GENERAL, STATE OF ALABAMA,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 19, 2018)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Appellant Christopher Lee Price appeals a judgment entered by the Southern District of Alabama in favor of the Alabama Department of Corrections ("ADOC")[1] following a bench trial on Price's Eighth Amendment method-of-execution claim.  Price is an inmate who was sentenced to death as a result of being found guilty of killing a man during the commission of a robbery.[2] Following his direct criminal appeals, Price brought a civil lawsuit under 42 U.S.C. § 1983 alleging that the ADOC's use of midazolam in its three-drug lethal-injection protocol violates the Eighth Amendment's ban on cruel and unusual punishment because it is not effective in rendering an inmate insensate during execution.  According to Price, midazolam is ineffective, so the remaining two drugs administered during his execution will paralyze him and then cause him to experience extreme pain.

The district court held a bench trial on Price's § 1983 claim.  But the district court bifurcated the trial, addressing only whether Price could meet his burden to show that his chosen alternative drug—pentobarbital—was available to the ADOC. Following trial, the district court found in favor of the ADOC and against Price.  It concluded that Price had failed to meet his burden to show that pentobarbital was a feasible and available drug for use by the ADOC.  In this appeal, Price argues he

---

[1] Although Price sued various defendants below, he challenges the ADOC's three-drug lethal-injection protocol.  Therefore, for ease of reference, we refer to only the ADOC in this opinion.

[2] Price currently resides at Alabama's Holman Correctional Facility.

presented evidence sufficient to meet his burden as to the availability of pentobarbital. Based on this contention, he urges this Court to reverse the district court's decision and remand the case for further proceedings.

After thorough review, we conclude Price has shown no clear error in the district court's factual findings, and our binding precedent in the form of *Arthur v. Commissioner, Alabama Department of Corrections*, 840 F.3d 1268 (11th Cir. 2016), has already determined that a materially indistinguishable factual record fails to establish a viable Eighth Amendment method-of-execution claim. Therefore, we affirm the district court's decision in favor of the ADOC and against Price.

## I.

## A.

Price was indicted for intentionally causing Bill Lynn's death during a robbery in the first degree. *See Price v. State*, 725 So. 2d 1003, 1062 (Ala. Crim. App. 1997), *aff'd sub nom. Ex parte Price*, 725 So. 2d 1063 (Ala. 1998). Following a jury trial, Price was convicted and sentenced to death for Lynn's murder. *Id.* at 1011. Though Price filed a direct appeal of his conviction and death sentence, both were affirmed. *See id.* at 1062, *aff'd*, 725 So. 2d 1063 (Ala. 1998). Price's conviction and sentence became final in May 1999 after the Supreme Court

denied his petition for writ of certiorari to the Supreme Court of Alabama.  *See Price v. Alabama*, 526 U.S. 1133 (1999).

Price then filed a state post-conviction Rule 32 petition, but the petition was denied, and the Court of Criminal Appeals of Alabama affirmed the dismissal.  *See Price v. State*, 880 So. 2d 502 (Ala. Crim. App. 2003).  The Alabama Supreme Court denied certiorari review.  *Ex parte Price*, 976 So. 2d 1057 (Ala. 2006).

Later, Price filed a petition for writ of habeas corpus in the Northern District of Alabama.  The district court issued an opinion denying the petition with prejudice and entering judgment against Price.  This Court affirmed that judgment.  *See Price v. Allen*, 679 F.3d 1315, 1319–20, 1327 (11th Cir. 2012) (per curiam).  The Supreme Court also denied Price's petition for writ of certiorari.  *Price v. Thomas*, 568 U.S. 1212 (2013).

**B.**

Under § 1983, Price subsequently filed this Eighth Amendment challenge to his method of execution.  More specifically, Price takes issue with Alabama's use of midazolam in its lethal-injection protocol.  He seeks for the ADOC to return to using pentobarbital instead of midazolam as the first drug in the three-drug lethal-injection protocol.

Since July 1, 2002, Alabama has used lethal injection as its preferred method of execution.  *See Arthur v. Comm'r, Alabama Dep't of Corr.,* 840 F.3d 1268,

4

1273–74 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 725 (2017), *reh'g denied,* 137 S. Ct. 1838 (2017) (citation omitted).  The ADOC has used a three-drug protocol since it began executing inmates by lethal injection.[3] *See Brooks v. Warden*, 810 F.3d 812, 823 (11th Cir.), *cert. denied sub nom. Brooks v. Dunn*, 136 S. Ct. 979 (2016).  Each of the three drugs has an intended purpose.  The first drug is meant to render the prisoner unconscious and insensate.  *Baze v. Rees*, 553 U.S. 35, 44 (2008) (plurality opinion).  The second drug is a paralytic agent that "inhibits all muscular-skeletal movements and, by paralyzing the diaphragm, stops respiration."  *Id.* (citation omitted).  The third drug "interferes with the electrical signals that stimulate the contractions of the heart, inducing cardiac arrest."  *Id.* (citation omitted).

From the time Price was sentenced until September 10, 2014, the ADOC followed a protocol during which sodium thiopental or pentobarbital was used as

---

[3] The State of Alabama provided death-row inmates thirty days to "opt out" of lethal injection and to elect electrocution as the method of execution.  *See* Ala. Code § 15-18-82.1(b).  Price did not opt for electrocution, so he became subject to lethal injection on August 1, 2002.  However, effective June 1, 2018, a person sentenced to death in Alabama had the opportunity to elect that his death sentence be executed by electrocution or nitrogen hypoxia.  The statute provides that election of death by nitrogen hypoxia is waived unless it is personally made by the inmate in writing and delivered to the warden within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death.  If a judgment was issued before June 1, 2018, the election must have been made and delivered to the warden within 30 days of June 1, 2018.  *See* Ala. Code § 15-18-82.1(b)(2).  We have not been advised by either party that Price opted for death by nitrogen hypoxia, so his § 1983 claim is not moot.

5

the first drug in the protocol.[4]  *See Arthur*, 840 F.3d at 1274.  After the administration of the sedative, the protocol called for the administration of either rocuronium bromide or pancuronium bromide to inhibit movement and stop respiration.  Finally, under the protocol, potassium chloride—a drug that causes the inmate's heart to stop beating—was to be administered.

On September 11, 2014, the ADOC changed its lethal-injection protocol and replaced pentobarbital with midazolam as the first drug, citing the growing unavailability of pentobarbital.[5]  *See Arthur*, 840 F.3d at 1274.  After the modification to midazolam, the State of Alabama alerted inmates on death row by filing motions to set execution dates with the Alabama Supreme Court.  On September 11, 2014, the State of Alabama asked the Alabama Supreme Court to set an execution date for Price.

On October 8, 2014, Price filed a civil complaint against the Commissioner of the ADOC and others, setting forth a § 1983 claim in which he claimed that the

---

[4] From 2002 until April 6, 2011, the ADOC used sodium thiopental as the first drug in the protocol.  *See Brooks*, 810 F.3d at 823.  Due to a national shortage of sodium thiopental, the ADOC replaced the drug with pentobarbital.  From April 2011 until September 10, 2014, the ADOC used pentobarbital as the first drug in the protocol.  *Id.*

[5] Alabama's current lethal injection protocol calls for the administration of (1) a 500mg dose of midazolam hydrochloride, (2) followed by a 600mg dose of rocuronium bromide, and (3) finally, 240 milliequivalents of potassium chloride. *See Arthur*, 840 F.3d at 1274.  This lethal injection protocol involves the same drugs, administered in the same sequence, as the protocol at issue in *Glossip v. Gross*, 135 S. Ct. 2726, 2734–35 (2015) and *Arthur*, 840 F.3d at 1274.

new lethal-injection protocol using midazolam violated the Eighth and Fourteenth Amendments' ban on cruel and unusual punishment.[6]

The Supreme Court's decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), sets forth the relevant two-pronged standard a plaintiff must meet to succeed on a method-of-execution claim.

First, to prevail on an Eighth Amendment challenge to a particular lethal-injection protocol, the inmate must show a "'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* at 2737 (quoting *Baze*, 553 U.S. at 50) (quoting *Farmer v. Brennan*, 511 U.S. 825, 846, and n.9 (1994)). The Supreme Court has explained that prisoners cannot succeed on a method-of-execution claim unless they can establish that the method challenged presents a risk that is "'*sure or very likely* to cause serious illness and needless suffering,' and [that] give[s] rise to 'sufficiently *imminent* dangers.'" *Id.* (quoting *Baze*, 553 U.S. at 50 (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993)).

Second, the prisoner must "identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"

---

[6] In July 2015, Price filed an Amended Complaint, which is the operative complaint in the case. In the Amended Complaint, Price again alleges that the use of midazolam in the three-drug protocol violates the Eighth Amendment's ban on cruel and unusual punishment. For ease of reference, we refer to the Amended Complaint simply as the Complaint.

*Id.* (quoting *Baze*, 553 U.S. at 52) (alteration in *Baze*).  Where a prisoner claims a safer alternative to the State's lethal-injection protocol, he cannot make a successful challenge by showing a "'slightly or marginally safer alternative.'" *Id.* (quoting *Baze,* 553 U.S. at 51).

In his § 1983 action, Price asserts that a substantial likelihood exists that midazolam will fail to render him unconscious and insensate during his execution and that he will likely experience "prolonged, excruciating, and needless pain while the [second drug in the protocol] forcibly suffocates him and [the final drug in the protocol] burns his veins and internal organs and stops his heart."  Thus, he claims that the ADOC's current lethal-injection protocol presents a substantial risk of serious harm that meets *Glossip*'s (and *Baze*'s) first standard.  To satisfy the second prong of *Glossip*, Price proposes that the ADOC return to its use of pentobarbital as the first drug in the three-drug protocol.  Price contends compounded pentobarbital is more effective than midazolam and is available.[7] According to Price, the ADOC's use of midazolam will violate his constitutional rights since the ADOC could obtain pentobarbital to complete his execution in a humane manner.

Before us for review is the district court's Order of March 15, 2017, finding that the ADOC was entitled to judgment on Price's Eighth Amendment claim.  *See*

---

[7] Price originally alleged that sodium thiopental was also a viable alternative but later indicated that he was no longer pursuing that claim.

8

*Price v. Dunn*, No. CV 14-0472-KD-C, 2017 WL 1013302 (S.D. Ala. Mar. 15, 2017).  The district court entered its Order following a bench trial that focused on only the availability of pentobarbital to the ADOC as an alternative to midazolam.[8]  During the trial, the parties offered affidavits, deposition testimony, and other exhibits into evidence.  The district court also heard live testimony from Anne Adams Hill, who has acted as General Counsel to the ADOC since March 2011.  Hill is the ADOC employee responsible for procuring drugs for use in lethal injections.

In its March 15, 2017, Order, the district court concluded that Price failed to meet his burden of proof at trial to show that the proposed alternative drug—pentobarbital—was available to the ADOC.  *Price*, 2017 WL 1013302 at *6.  In its findings of fact, the district court found that in September 2014, when the

---

[8] When it entered its order on summary judgment earlier in the litigation, the district court announced the bifurcated-bench-trial process.  The district court explained if Price could meet his burden with respect to the availability of an alternative method of execution, then it would schedule a second trial on the remaining issues including, but not limited to, the following:

> (1) whether the use of midazolam presents a risk that is sure or very likely to cause serious illness and needless suffering, and give[s] rise to sufficiently imminent dangers; (2) if so, whether the alternative method of execution designated by Plaintiff is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain; and (3) whether the switch from pentobarbital to midazolam in September of 2014 was a substantial change in the execution protocol so as to reset the statute of limitations clock.

The last issue listed was based on the ADOC's assertion that Price's Eighth Amendment claim was time-barred under the applicable statute of limitations.  We do not address this claim because we affirm the district court's decision on other grounds.

9

ADOC amended its three-drug lethal-injection protocol, it was unable to obtain manufactured pentobarbital. *Id.* at *2. Although manufactured pentobarbital became unavailable to the ADOC for use in lethal injections, the district court recognized that Georgia, Texas, Missouri, and Virginia have used compounded[9] pentobarbital for lethal injections since 2014.[10] *Id.*

In its Order, the district court recounted Hill's trial testimony concerning her efforts to obtain either compounded pentobarbital itself or a source for the drug for use in lethal injections by the ADOC. *Id.* at *2–3. According to Hill, in the fall of 2015, Hill contacted the departments of corrections for the states of Georgia, Texas, Virginia, and Missouri in an attempt to obtain compounded pentobarbital or a source for the drug. *Id.* at *2. Hill's efforts, however, were unproductive.[11] *Id.* So around December of 2015, Hill contacted eighteen compounding pharmacies within Alabama in order to obtain compounded pentobarbital, but none were

---

[9] Compounding is "the process of combining, mixing, or altering ingredients to create [a drug] . . ." that is not manufactured. *See* https://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/pharmacycompounding/ucm339764.htm (last visited Sept. 18, 2018).

[10] The district court acknowledged that Virginia has used the drug in only one execution when it obtained pentobarbital from Texas. The district court noted, and the parties agreed, that Virginia does not currently have a source for compounded pentobarbital. *Price*, 2017 WL 1013302 at *2 n.6.

[11] Hill testified that she called officials in Missouri, Texas, Virginia, and Georgia and asked them if they would provide her with the name of their source for compounded pentobarbital. All declined to provide the names of their sources. Hill also explained that she asked officials from these states whether they would give her some of their stock of pentobarbital, but all stated they would not.

10

willing and able to provide the drug. *Id.*[12] But Hill did not attempt to contact compounding pharmacies in any other state and did not try to reach the previously contacted Alabama compounding pharmacies after December 2015. *Id.*

Next, the district court found that Hill continued to seek out a supplier for compounded pentobarbital between the fall of 2015 and immediately prior to trial. *Id.* at *3. More specifically, she reached out to the departments of corrections for Missouri, Texas, Virginia, and Georgia in the "few weeks" prior to trial (*i.e.*, in late 2016) to inquire as to whether they would provide the drug to the ADOC or give her information concerning their suppliers. *Id.* These efforts were also unsuccessful. *Id.* The district court noted, however, that Hill did not ask the officials of those states to "pass along" her information to their suppliers to determine whether the suppliers were interested in providing compounded pentobarbital to the ADOC. *Id.*

Then the district court turned to the testimony of Price's expert witness, Gaylen M. Zentner, Ph.D., an expert in pharmaceutical chemistry, manufacturing, and compounding. *Id.* at *1 n.2. The district court limited its reliance on Dr. Zentner's testimony as follows: "the only thing it would take away from" the testimony was that compounded pentobarbital is "not hard to make if you have the supplies." *Id.* at *1 n.2.

---

[12] Hill testified that she contacted at least twenty-five compounding pharmacies. She contacted eighteen "around December of 2015." All of the pharmacies were located in Alabama.

11

After making those findings of fact, the district court analyzed whether Price had met his burden to show that an alternative method of execution—one using pentobarbital—was available to the ADOC. The district court determined that Price had not met his burden.

In finding in favor of the ADOC, the district court emphasized that we had recently rejected a similar claim in *Arthur*, where the plaintiff-prisoner presented substantially the same evidence as was presented in this case by Price. *Id.* at *5–6. Indeed, in denying relief to Price, the district court quoted directly from our decision in *Arthur*:

> [T]he fact that other states in the past have procured a compounded drug and pharmacies in Alabama have the skills to compound the drug does not make it available to the ADOC for use in lethal injections in executions. The evidentiary burden on [the Plaintiff] is to show that "there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions." *Brooks*, 810 F.3d at 820.

*Id.* at *5 (citing *Arthur,* 840 F.3d at 1302) (alteration and emphases in *Arthur*). Further relying on *Arthur*, the district court concluded that although other states had recently used compounded pentobarbital to carry out executions, no indication exists that those states would sell it to the ADOC or name their sources. *Id.* In short, the district court determined that Price had not met his burden to show "there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in

12

executions." *Id.* (citing *Brooks*, 810 F.3d at 820) (emphases in *Arthur*).[13]

Consequently, the district court entered judgment in favor of the ADOC.

Price timely filed his appeal.  On appeal, he asserts he has met his burden to show that pentobarbital is available to the ADOC.  In particular, Price contends that the district court erred because it effectively construed Supreme Court and Eleventh Circuit precedent as requiring him to identify a *specific* compounding pharmacy that is presently willing to sell pentobarbital to the ADOC.

After carefully considering the record and the parties' briefs, and with the benefit of oral argument, we hold that the district court did not err when it granted judgment in favor of the ADOC.  We do so because our precedent requires this result.

## II.

In method-of-execution challenges, this Court reviews the district court's factual findings for clear error, and the petitioner bears the burden of persuasion. *Arthur*, 840 F.3d at 1301 (citing *Glossip*, 135 S. Ct. at 2739).  We conduct *de novo* review of the district court's legal conclusions.  *Id.* at 1314 n.29.

## III.

---

[13] Although the district court found in favor of the ADOC, it recognized the problems Price faced in meeting his burden.  *Price*, 2017 WL 1013302 at *5 n.10.  The district court stated, "First, it would not seem feasible that a compounding pharmacy would be willing to disclose to a non-purchaser its willingness to do business with the ADOC.  Second, the ethics of counsel assisting the state in its endeavor to lethally inject his client would be questionable." *Id.* But in the end, the district court found the "law regarding Price's burden is clear." *Id.*

*Glossip* and *Baze* form the cornerstone of Price's Eighth Amendment method-of-execution claim.  As we acknowledged in *Arthur*, the Supreme Court has required death-row inmates seeking to challenge a state's method of execution to meet a "heavy burden."  *Arthur*, 840 F.3d at 1299 (quoting *Baze*, 553 U.S. at 53).  Here, the district court did not err in finding Price failed to meet that heavy burden, and we conclude that our decision in *Arthur*—which presented nearly identical facts regarding the availability of compounded pentobarbital—prevents Price from prevailing in this appeal.

**A.**

Because the precedential impact of *Arthur* drives the outcome here, we discuss at length the facts and holdings of that case.  As in Price's case, *Arthur* involved a death-row inmate's § 1983 claims[14] that Alabama's three-drug lethal-injection protocol—which used midazolam as the first drug in the protocol—violated the Eighth Amendment because midazolam failed to render the inmate insensate during execution.[15]  *Arthur*, 840 F.3d at 1276–77.  As proposed feasible alternative methods of execution, the petitioner raised single-drug protocols of compounded pentobarbital or sodium thiopental.  *Id.* at 1277.

---

[14] Arthur brought facial and as-applied challenges to Alabama's lethal-injection protocol. Only Arthur's facial challenge is relevant here.

[15] The lethal-injection protocol in *Arthur*, as here, involved the same drugs in the same sequence as the protocol at issue in *Glossip*. *See Arthur*, 840 F.3d at 1274.

14

We began our review in *Arthur* by setting forth the two-part test that an inmate must meet in order to prevail on a method-of-execution claim as provided for by the Supreme Court in *Baze* and *Glossip*. *Id.* As we have noted, that test requires a petitioner to plead and prove both prongs of the test: (1) "that the challenged method of execution presents a risk that is sure or very likely to cause serious illness and needless suffering, and give[s] rise to sufficiently imminent dangers," *id.* at 1299 (citations, internal quotation marks, and emphases omitted); and (2) that a "feasible, readily implemented" alternative is available, and it "in fact significantly reduces a substantial risk of severe pain." *id.* (alteration, citations, and quotation marks omitted).

Next, we closely reviewed the Supreme Court's decision in *Glossip* and our own decision in *Brooks* with respect to the second prong of the test. Viewing the precedents together, we concluded that *Glossip* requires a petitioner to prove three things to meet the "known and available alternative" test

> (1) the State actually has access to the alternative;
>
> (2) the State is able to carry out the alternative method of execution relatively easily and reasonably quickly; and
>
> (3) the requested alternative would in fact significantly reduce [] a substantial risk of severe pain relative to the State's intended method of execution.

15

*Id.* at 1300 (citing *Glossip*, 135 S. Ct. at 2737; *Brooks*, 810 F.3d at 819–23) (internal quotation marks omitted).[16]  We then applied this standard to analyze whether a single dose of pentobarbital was an alternative available to the ADOC's current three-drug protocol, noting once again that the relevant standard of review and burden of persuasion were "critical" to the resolution of the case. *Id.* at 1301.

In reviewing the evidence presented at trial, we considered testimony of the same expert relied upon by Price here, Dr. Zentner.  In *Arthur*, he stated that, in his opinion, "the talent, expertise, and facilities to perform sterile compounding" existed in Alabama and that "all ingredients required to formulate a compounded preparation of pentobarbital sodium" were "readily available." *Id.* at 1278.  Dr. Zentner explained that the process of compounding was relatively simple and straightforward and that the ingredients for compounding pentobarbital were available for sale in the United States. *Id.* at 1278–79.  He further reported conducting an Internet search and finding nineteen compounding pharmacies in Alabama. *Id.* at 1279.  When Dr. Zentner contacted two of these pharmacies, they both indicated they performed sterile compounding. *Id.*  But significantly, Dr. Zentner admitted that he did not inquire as to whether the pharmacies would be willing to compound pentobarbital for use in an execution by the ADOC. *Id.*  He also conceded that he had no knowledge of whether the pharmacies would be able

---

[16] As we discuss later, only the first two elements of this test are directly at issue in Price's appeal.

16

to procure pentobarbital, nor did he ever attempt to purchase the drug from a manufacturer. *Id.*

For its part, the ADOC relied on the testimony of its general counsel, Anne Hill—the same individual who testified during Price's trial. Hill's testimony in *Arthur* is strikingly similar to hers in Price's trial. In *Arthur*, Hill stated that her job required her to constantly seek ways to procure new drugs and new sources for drugs. *Id.* at 1280. She was aware that in 2015, Georgia, Missouri, Texas, and Virginia executed inmates using a single-drug protocol of compounded pentobarbital. *Id.* Hill further testified that she contacted representatives from these four states' departments of corrections. *Id.* All four were unwilling to provide any of their pentobarbital to the ADOC, and they also refused to identify to the ADOC their source for obtaining the drug. *Id.* Hill continued, stating that between September 2014 and November 2015, she contacted eleven potential sources of pentobarbital, including the four states using the drug, along with seven pharmacies in Alabama. *Id.* All were unwilling to compound pentobarbital for the ADOC. *Id.* Similarly, Hill testified in *Arthur* that in late 2015, she contacted all of the eighteen pharmacies on Dr. Zentner's list,[17] but none agreed to provide pentobarbital to the ADOC—most saying that they were not able to compound

---

[17] The Court in *Arthur* noted that although Dr. Zentner's list contained nineteen pharmacies, two of the pharmacies were simply two locations of the same entity. Accordingly, the list actually contained eighteen pharmacies. *See Arthur*, 840 F.3d at 1280 n.8.

17

pentobarbital.  *Id.*  In total, Hill stated that she reached out to "at least 29" potential sources in an attempt to procure compounded pentobarbital for the ADOC.  *Id.*

After reviewing the evidence, we concluded that the district court's factual finding that pentobarbital was not available to the ADOC for use in executions was not clearly erroneous.[18]  *Id.* at 1301.  We found substantial record evidence—including Dr. Zentner's inability to point to any source willing to compound pentobarbital for the ADOC, and Hill's testimony that, despite contacting 29 potential sources, she was unable to procure any compounded pentobarbital for the ADOC's use in executions—supported the finding that pentobarbital was not available to the ADOC.  *Id.*  And we specifically rejected Arthur's invitation to hold that "if a drug is capable of being made and/or in use by other entities, then it is 'available' to the ADOC."  *Id.* at 1301–02.  To the contrary, we expressly held that "the evidentiary burden on [the § 1983 plaintiff] is to show that 'there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions."  *Id.* at 1302 (emphases in *Arthur*) (quotation omitted).  And we concluded that "[a]n alternative drug that its manufacturer or compounding pharmacies refuse to supply for lethal injection 'is no drug at all for *Baze* purposes.'"  *Id.* (quoting *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1275 (11th Cir. 2014) (Carnes, C.J., concurring)).

---

[18] One judge on the panel dissented.  *See Arthur*, 840 F.3d at 1321 (Wilson, J., dissenting).

We likewise rejected Arthur's argument that the ADOC was required to make a good-faith effort to obtain the alternative drug. *Id.* at 1302–03. Yet despite this, we found that even if *Glossip* somehow imposed a good-faith effort on the part of the State, "the ADOC made such an effort here by contacting 29 potential sources for the drug, including four other departments of correction and multiple compounding pharmacies." *Id.* at 1303. Under those facts, we affirmed the district court's conclusion that Arthur had failed to prove the availability of an alternative method of execution.[19] *Id.*

**B.**

Price acknowledges that in *Arthur*, we held that in order to satisfy the "known and available alternative" requirement, he must prove that "(1) the State actually has access to the alternative; [and] (2) the State is able to carry out the alternative method of execution relatively easily and reasonably quickly." But he asserts that the Supreme Court has not weighed in on the definition of "known and available." And in Price's view, currently, the law places an "unfair and impractical burden" on a § 1983 plaintiff since it requires evidence that "will rarely, if ever, be available."

---

[19] Although this finding would have been enough to affirm, we went further and concluded that Arthur also had not met the first prong of *Glossip*—that the challenged method presented a substantial risk of severe pain. The majority stated, "[I]t is difficult to regard a practice as objectively intolerable when it is in fact widely tolerated . . . . Both this Court and the Supreme Court have upheld the midazolam-based execution protocol that Arthur challenges here." *Arthur*, 840 F.3d at 1303 (citations and internal quotation marks omitted).

19

Price complains that, to satisfy his burden to show a "known and available" alternative, the district court imposed on him an "impossible burden" of showing that any steps the ADOC might take to procure pentobarbital would "result in success." He claims, as a practical matter, this meant he was required to identify the name of a compounding pharmacy willing to sell pentobarbital to the ADOC. But according to Price, he would never be able to satisfy this requirement because he could not provide a potential supplier with assurances of confidentiality and could not negotiate a contract for the purchase of pentobarbital on behalf of the ADOC. Price further argues that his own attempts to identify the names of pentobarbital suppliers illustrate the implausibility of requiring a plaintiff to identify a specific supplier.[20]

Therefore, Price proposes that we refine our "available alternative" jurisprudence by crafting a new burden-shifting framework in Eighth Amendment method-of-execution cases. Under Price's proposed new test, when a § 1983 plaintiff makes out a *prima facie* case—providing evidence to allow a "just and reasonable inference" that compounded pentobarbital is presently available—the burden would shift to the defendant to negate the reasonableness of this inference.

---

[20] Price contends Missouri's Department of Corrections refused to disclose the name of its pentobarbital supplier. Additionally, he claims the Georgia Department of Corrections litigated to prevent disclosure of any information about its efforts to obtain lethal-injection drugs. Finally, Price points out that the Texas Department of Criminal Justice would produce only heavily redacted information pertaining to its lethal-injection drugs, redacting any identifying information of its suppliers.

20

And Price contends the evidence he presented at trial—that pentobarbital is simple to compound, that other states' departments of corrections are presently able to obtain pentobarbital from compounding pharmacies, and that the ADOC has failed to take "simple, and obvious steps" that could enable it to obtain the drug—meets this burden.  Price contrasts his situation with that set forth in *Glossip*, asserting that he has identified compounded pentobarbital as an adequate alternative to midazolam and that three states are currently using the drug in executions.  He also points out that pentobarbital is relatively easy to compound. Based on this reasoning, Price argues compounded pentobarbital is a drug that could be used in place of midazolam as required by *Glossip*.

Additionally, Price disagrees with any reading of *Arthur* that absolves the ADOC of any obligation to make an effort to procure pentobarbital.  According to Price, the ADOC cannot prevent Price from meeting his burden of showing an "available alternative" by refusing to take what he deems to be "simple, obvious steps" to procure pentobarbital.  Those simple steps would be to ask other states' departments of corrections to alert their supplier that the ADOC was willing to purchase pentobarbital on the same terms.

After careful consideration of Price's arguments, we must reject them. While we understand Price's desire to alter the burden imposed on him in this method-of-execution case, that burden is already cemented by binding precedent.

21

Our decision in *Arthur* governs here, and it dictates an affirmance of the district court's decision. In *Arthur*, we explained that the "available alternative" test set forth in *Glossip* requires a petitioner to prove, among other things, that "the State *actually has access to the alternative*; and []the State is able to carry out the alternative method of execution relatively easily and reasonably quickly. . . ." *Arthur*, 840 F.3d at 1300 (emphasis added) (citing *Glossip*, 135 S. Ct. at 2737; *Brooks*, 810 F.3d at 819–23). And our precedent already clearly places on Price the burden to show that "there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions." *Id.* at 1302 (emphases in *Arthur*) (quoting *Brooks*, 810 F.3d at 819–20). We are bound by those decisions.

But to clarify, contrary to Price's contention, our decision in *Arthur* does not require Price to "identify a specific supplier that has already committed to selling pentobarbital to the ADOC." Nor does it require Price to engage in contractual negotiations on behalf of the ADOC. Rather, Price must identify a source for compounded pentobarbital and prove that the ADOC "actually has access" to compounded pentobarbital. *See id.* at 1300.

Here, though, the evidence Price offered on this point did not differ in any material way from that offered by the petitioner in *Arthur*. Indeed, Price even relied on the same expert witness—Dr. Zentner—who said essentially the same things as he did in *Arthur*: that compounding pharmacies exist in the state of

22

Alabama and that they should be able to compound pentobarbital. But that fact does nothing to establish what we said in *Arthur* is a petitioner's burden to show: "that there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions." *Id.* at 1302 (emphases in original) (citation and internal quotation marks omitted). Nor does the fact that three or four other states seem to have access to and use pentobarbital in their executions satisfy the standard that we articulated in *Arthur*. *See id.* ("We expressly hold that the fact that other states in the past have procured a compounded drug . . . does not make it available to the ADOC for use in lethal injections in executions.").

As for Price's contention that "simple and obvious steps" were available to the ADOC to obtain pentobarbital—such as asking other state departments of corrections to "pass along" information to their suppliers—our binding precedent does not place the onus on the State to locate pentobarbital. Instead, *Arthur* squarely placed the burden on Price to identify likely sources and determine whether any pharmacy would be willing to make pentobarbital available to the ADOC for use in executions. *See id.* at 1302–03. Here, Price presented no such evidence other than what was already presented in *Arthur* and found to be inadequate.

We likewise cannot adopt Price's proposed burden-shifting scheme. Our case law precludes the conclusion that, with respect to the second prong of *Glossip*,

23

the State (*i.e.*, the ADOC) must prove that it cannot acquire the desired drug. *See id.* at 1303 (citing *Brooks*, 810 F.3d at 820). And even if we were to adopt Price's proposed burden-shifting scheme, his claim would still fail. Again, on a materially factually indistinguishable record in *Arthur*, we found that even if *Glossip* somehow imposed a good-faith effort on the State, the ADOC made such an effort by contacting various potential sources for the compounded pentobarbital, including "four other departments of correction and multiple compounding pharmacies." *Id.* Hill testified to the same efforts in this case.

The Supreme Court has made clear that "in method-of-execution challenges, (1) the district court's factual findings are reviewed under a deferential clear error standard, and (2) the petitioner-inmate bears the burden of persuasion." *Id.* at 1301 (citation omitted). We previously acknowledged that the determination of whether an alternative drug is available to a department of corrections is often based on testimony and the determination of whether that testimony is credible and supports a finding of availability is a "matter for [the] trier of fact." *Grayson v. Warden*, *Comm'r, Alabama Dep't of Corr.*, 869 F.3d 1204, 1226 (11th Cir. 2017); *see also Boyd v. Warden*, *Holman Corr. Facility*, 856 F.3d 853, 868 (11th Cir. 2017) (noting the factual nature of whether an alternative is sufficiently feasible and readily implementable to satisfy *Glossip*'s second prong—particularly when a

24

plaintiff challenges a state's lethal injection protocol and proposes a modification to that protocol).

Here, in assessing the evidence presented by both parties, the district-court judge determined that Price had not met his burden of showing that compounded pentobarbital was readily available to the ADOC as an alternative to midazolam. We are unable to conclude that the district court erred, in light of our prior holding in *Arthur*. And, we agree with the district court that, as a matter of law, Price failed to meet his burden of coming forward with evidence sufficient to establish a *prima facie* Eighth Amendment violation because he was unable to show that compounded pentobarbital is readily available to the ADOC.

Based on virtually identical evidence presented in *Arthur*, this Court previously held that the district court did not err in determining that Arthur failed to carry his burden to show compounded pentobarbital is a known and available alternative to the ADOC. *Arthur*, 840 F.3d at 1302. Price brought nothing new in this case that was not already present in *Arthur*, except for an FDA list of compounding pharmacies in various states outside of Alabama. As with the list of pharmacies presented in *Arthur*, Price did not prove that any of these pharmacies were willing and able to compound pentobarbital for the ADOC. Significantly, Price presented no evidence during trial that either he or his lawyer ever contacted (or attempted to contact) any of the pharmacies to determine whether they would

25

be willing to even *consider* making pentobarbital for execution purposes. The only live testimony provided at trial was Hill's, which, as we concluded in *Arthur*, demonstrated the unavailability of compounded pentobarbital.

In *Arthur*, as here, Hill testified about the four departments of corrections and twenty-five compounding pharmacies that she contacted in an effort to obtain pentobarbital. Her efforts were unsuccessful. In contrast, Price's expert (Dr. Zentner) did not name a single source willing and able to sell compound pentobarbital to the ADOC for use in lethal injection. *Id.* at 1301. Like Price, Arthur pointed to the fact that other states had been able to obtain pentobarbital as proof that it was readily accessible. *Id.* at 1301–02. Also similar to Price, Arthur relied on the fact that pharmacies have the skills to compound a drug to assert that an alternate drug was "available" to the ADOC for use in lethal injections. In *Arthur*, we concluded that the evidence was insufficient to meet the prisoner's burden to show that "there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions." *Id.* at 1302 (emphases in *Arthur*) (quoting *Brooks*, 810 F.3d at 820). We must do the same here.

Ultimately, *Arthur* restrains us to hold that the district court did not commit error when it concluded that Price failed to meet his burden to show that compounded pentobarbital was readily available to the ADOC. Particularly where this Court has already considered and decided this issue under virtually identical

facts, we do not find any error. *See Glossip*, 135 S. Ct. at 2740. Therefore, we must affirm.

## IV.

The district court did not err in entering final judgment in favor of the ADOC and against Price on his Eighth Amendment method-of-execution claim. Accordingly, we affirm.

**AFFIRMED.**